E. Jerome Brose, Frank A. Poswistilo and Karl K. LaBarr, Jr., Appellants *v.* Easton Parking Authority and the City of Easton, Appellees.

Argued April 5, 1979, before Judges BLATT, DISALLE and MACPHAIL, sitting as a panel of three.

*Thomas R. Elliott,* with him *E. Jerome Brose,* and *Brose, Poswistilo & Kreglow,* for appellants.

*Robert A. Freedberg,* Assistant City Solicitor, City of Easton, for appellees.

OPINION BY JUDGE MACPHAIL, July 3, 1979:

Appellants E. Jerome Brose, Frank Poswistilo, and Karl K. LaBarr, Jr. appeal to this Court from a decision of the Court of Common Pleas of Northampton County sitting in Equity refusing to remove a nonsuit entered against them. The only issue raised by Appellants is whether the City of Easton (City) has the power to construct commercial retail and office space and lease the same to private users. The Chancellor held that the City did have such power. The Chancellor erred in deciding this issue because it had been waived by Appellants. Nevertheless, we affirm the Chancellor's order on the basis of that waiver.

On July 3, 1972, the Easton City Council enacted an ordinance authorizing and approving a lease agreement between the City and the Easton Parking Authority (Authority) providing that the City would lease a public parking facility constructed and owned by the Authority for a period of 32 years at an annual

rent of $225,000.00. The purpose of the lease was to guarantee principal and interest payments on revenue bonds sold by the Authority to pay for the facility's construction. The City desires to convert approximately 13,000 square feet of the parking facility to commercial retail and office space and to rent it to private individuals and businesses at a minimum rate of $4.13 per square foot.

Appellants objected to the City's plans and filed suit asking the Court (1) to enjoin the City and the Authority from spending any money in converting the parking space to commercial space or from renting or leasing such space "until the reasonableness of the rates proposed to be charged be judicially determined pursuant to 53 P.S. [§]345(8)'"[1] and (2) to determine "the reasonableness of the rental rates proposed to be charged" by the City and the Authority. A hearing was held on Appellants' complaint. At no point in the complaint[2] or during the hearing did Appellants even attempt to challenge the authority of the City to construct and lease the proposed commercial property. Their sole challenge was to the reasonableness of the proposed rates. At the close of Appellants' evidence, the City and the Authority moved for a nonsuit. The Court ordered the filing of briefs and the holding of oral argument on the question of entering a nonsuit. In their brief, Appellants *for the first time* argued that the proposed construction and leasing plans were *ultra vires* acts and, therefore, invalid. The Chancellor, while noting that Appellants "might well . . . have waived this issue" ruled on the issue and held the proposed acts to be valid. Following the Chancellor's de-

---

[1] Section 5 of the Parking Authority Law, Act of June 5, 1947, P.L. 458, *as amended*.

[2] Appellants filed a complaint and an amended complaint. Both were confined to the question of whether the proposed rental rate was reasonable.

cision and his denial of Appellants' motion to take off the nonsuit, Appellants brought this appeal, again questioning the *ultra vires* nature of the proposed acts.

"The general rule is well settled that questions *not properly raised* in the court below will not be considered . . . on appeal." (Emphasis added.) *Brunswick Corp. v. Key Enterprises, Inc.*, 431 Pa. 15, 18, 244 A.2d 658, 660 (1968); *see also Commonwealth v. Robinson*, 7 Pa. Commonwealth Ct. 521, 525, 300 A.2d 913, 915 (1973). The emphasized language—not properly raised—is fundamental to our decision. The issue which Appellants argue to us, *i.e.* whether the City proposes to do an *ultra vires* act, was brought to the attention of and decided by the Chancellor. The issue, however, was *not properly raised* in the lower court. Therefore, the Chancellor erred in considering it. "Judges in this State have been continually admonished to refrain from deciding issues which are not properly before the court. . . ." *Coleman v. Stevenson*, 20 Pa. Commonwealth Ct. 498, 501, 343 A.2d 375, 377 (1975). We heed this admonishment and decline to compound the error by reviewing the issue here. *Cf., Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114 (1974) (where our Supreme Court refused to rule on an alleged error in jury instructions when no objection was made to the instruction at trial but the issue was raised in post trial motions and on appeal).

Appellants state in the "Procedural History" section of their brief that they raised the *ultra vires* issue for the first time after the hearing because they did not discover until during the hearing that the actual construction and renting of commercial space was to be undertaken by the City and not by the Authority. We find this excuse untenable. The record is replete with evidence showing that Appellants did, indeed, know of the City's plans. Paragraph 9 of Appellants' amended complaint states that:

Media accounts of public meetings of the City, by its City Council, have indicated that the City has plans to expend in the neighborhood of $400,000 of City funds for the purpose of converting certain unused space in the parking garage to 13,000 square feet of office and retail use and, when so converted, to offer such space for renting or leasing on a commercial basis.

Appellant Brose then used almost identical language in testifying at the hearing. N.T. 5. Furthermore, in closing argument Appellant Brose stated that:

I have no quarrel with [the City's] right to do this. *It's a statutorily mandated right to lease space commercially.* That was contemplated perhaps back initially. *My quarrel arises only when it appears that they are going to lease it at a rate below cost,* and then I as a taxpayer am not only going to be low-balled competitively from being able to rent space in a building that I offer comparable facilities in, but I'm also ging to have to dip in my pocket and pay more taxes on the $225,000 a year that they now make up to run this parking facility. (Emphasis added.)

N.T. 121-22.

Even if it were not so clear that Appellants actually knew of the City's plans prior to suit, evidence indicates that they *should have known* of the plans. At the time the lease agreement was entered, Appellant Brose was a member of the Planning Commission which passed upon the parking facility in question and Appellant LaBarr was solicitor for the City. Furthermore, Section 8:07 of the lease, a copy of which was provided to Appellants in response to interrogatories answered prior to trial, stated that:

The City covenants that, as lessee, it will use its best efforts to enter into sub-leases of

commercial facilities forming a part of the Parking Facilities to such tenants and upon such terms and fair competitive basis as may be approved by the Authority.

Appellants failed to properly raise the issue of an *ultra vires* act before the Chancellor. The failure is inexcusable on the facts of this case. Appellants, therefore, have waived their right to argue this issue on appeal. Since Appellants presented no other issues for our consideration, we affirm the order of the lower court refusing to take off the compulsory nonsuit and dismissing Appellants' claim with prejudice.

ORDER

AND Now, this 3rd day of July, 1979, the order of the Court of Common Pleas of Northampton County in Equity at No. 11 April Term, 1977, dated July 21, 1978 is affirmed.