Ronald E. Knoche, Appellant *v.* Commonwealth of Pennsylvania, Department of Transportation, Appellee.

Submitted on briefs to Judges ROGERS, WILLIAMS, JR. and MACPHAIL, sitting as a panel of three.

*Horace M. Ehrgood,* for appellant.

*Harold H. Cramer,* Assistant Counsel, with him *Ward T. Williams,* Chief Counsel, and *Jay C. Waldman,* General Counsel, for appellee.

OPINION BY JUDGE MACPHAIL, December 21, 1982:

Ronald E. Knoche (Petitioner) appeals from an order of the Court of Common Pleas of Lebanon County affirming the action of the Director of the Bureau of Traffic Safety Operations (Director) recalling Petitioner's operating license until satisfactory evidence of competency to drive a motor vehicle is presented as authorized by Section 1519(c) of the Vehicle Code (Code), 75 Pa. C. S. §1519(c). The gravamen of this appeal is an interpretation of Section 1519(a) of the Vehicle Code, 75 Pa. C. S. §1519(a) which reads as follows:

*General Rule.*—The department, having cause to believe that a licensed driver or applicant may not be physically or mentally qualified to be licensed, may obtain the advice of a physician who shall cause an examination to be made or who shall designate any other qualified physician. The licensed driver or applicant may cause a written report to be forwarded to the department by a physician of the driver's or applicant's choice. Vision qualifications shall be determined by an optometrist or ophthalmologist. The department shall appoint one or more qualified persons who shall consider all medical reports and testimony and determine the competency of the driver or the applicant to drive.

Factually, in May of 1979, the Department of Transportation (DOT) received a letter from Petitioner's former wife expressing concern about the ability of the Petitioner to operate a motor vehicle due to his severe spinal arthritis which prevented him from turning his head. Believing this to be "cause" for implementing the provisions of Section 1519(a), DOT on September 6, 1979 requested Petitioner to undergo a physical examination conducted by a doctor of his choosing. Petitioner's doctor filed a written report with DOT several days later stating that Petitioner did have a limited range of motion due to his disability, ankylosing spondylitis, but that from a medical standpoint Petitioner was physically competent to drive a motor vehicle.[1]

In March of 1980, DOT requested Petitioner to take a special examination within 30 days of the notice thereof to prove his competency to drive. The examining Trooper testified Petitioner failed this examination because he missed five out of ten unspecified questions of law and he pulled out into an intersection in front of a pickup truck due to his inability to turn his head properly to see surrounding traffic. Based on this examination, the Trooper was of the opinion that Petitioner was not competent to operate a motor vehicle safely. Petitioner was notified by the Director on April 23, 1980 that his operating privileges were recalled effective May 28,

---

[1] On an Orthopedic Form, the pertinent question and answer were:

4) Does the orthopedic disability prevent him in any way from being a safe and competent driver? No

On the General Medical Form, the pertinent question and answer were:

5) From a medical standpoint only, do you consider this person physically and/or mentally competent to operate a motor vehicle? Yes X    No

1980, "until satisfactory evidence is presented as to proof of competency as authorized by Section 1519(c) of the Vehicle Code".

On August 6, 1980 Petitioner was again notified that he was requested to appear for a special operator's examination and on that same date Petitioner again failed this examination because he exceeded the speed limit twice and because of his physical difficulty in turning his head. He did pass the law part of the test, however, but, according to the Trooper, he again failed to check traffic when going through an intersection.

Petitioner filed a timely appeal from the order recalling his license. A de novo hearing was held by the trial court. DOT's evidence consisted of various exhibits and the testimony of the Trooper who conducted the special driving examinations. At the hearing, Petitioner also testified and challenged DOT's authority to determine his competency by means of special driver examinations. The trial court ruled that the Director did not abuse his discretion in recalling Petitioner's operating privileges based upon the two special driving examinations which Petitioner failed. The action of DOT, accordingly, was affirmed.

Our scope of review where the trial court has heard the case de novo, is to determine whether or not the facts found by the trial court are supported by competent evidence and to correct any conclusions of law erroneously made. *McKay v. Commonwealth*, 52 Pa. Commonwealth Ct. 24, 415 A.2d 910 (1980). We conclude that the trial court did err as a matter of law.

Inasmuch as the uncontradicted medical evidence was that Petitioner *was* competent to drive, DOT's recall order can be sustained only if the special op-

erator's examinations were authorized by law and if there was a proper determination of incompetency based upon that evidence by someone appointed by DOT pursuant to the provisions of Section 1519(a).

Regarding the use of special examinations by DOT for the purpose of determining competency, a brief review of legislative history will be helpful. In the Vehicle Code of 1959, Act of April 29, 1959, P.L. 58, *as amended,* Section 608(g) provided:

> The secretary may, in his discretion, require the special examination, by such agencies as the secretary may direct, of any applicant for learner's permit or operator's license, or of any operator, to determine incompetency, physical or mental disability, or disease, or any other condition which may prevent such applicant from exercising reasonable and ordinary control over a motor vehicle or tractor.

That provision was repealed by the Act of June 17, 1976, P.L. 162, effective July 1, 1977. When the present Code was enacted, an effort was made in the legislature to amend Section 1519(a) by including language which would authorize physical examinations "and such additional examinations and tests as the department may find necessary." *See* House Bill No. 425 (1979). The amendment did not pass.

In the instant case, the learned trial judge reasoned that it was clear that DOT had the authority to determine the competency of drivers. He opined that the statutory language stating that DOT "may" obtain the advice of a physician indicated to him that this was just one option DOT had and was not the exclusive means by which competency could be determined. The trial judge noted that his conclusion in this respect was contrary to that reached by the Court of Common Pleas of Bucks County in *Stahl License,*

8 D. & C. 3d 483 (1978). There, the trial court held that neither of two special examinations could be used to support the recall of an operator's privileges. While we agree with the trial court's observation in the instant case that the competency of drivers to "join the masses in a daily game of 'Russian roulette'" by operating a motor vehicle in today's complicated traffic patterns is a matter of utmost concern to all who use the highways, we believe also that DOT must operate within the law in making determinations as to who is and who is not competent to drive.

Our conclusion that special examinations are not a legitimate means of determining driver competency under the present law is buttressed by the last sentence in Section 1519(a). There it is stated that 1) DOT shall appoint a qualified person to determine competency and 2) the determination will be made on a consideration of "all medical reports and testimony". In the instant case, the trial judge believed that this statutory obligation was fulfilled when DOT had a state policeman conduct a driver examination. It will be noted, however, that the policeman had not even seen, much less considered, the medical reports. Furthermore, there is no indication in the record of this case concerning who has been appointed by DOT to perform the function of determining competency. Finally, the statutory language is that competency shall be determined on the basis of medical *reports* and *testimony*. While an argument might be made that that language means a) medical reports *and* b) testimony, we believe the more reasonable interpretation is that it means medical reports and medical testimony. In any event, whatever those specific words may mean, it is clear to us that there is no mention of special operator's examinations as a basis for such

determinations. Thus, while we may agree with the trial court that someone who actually sees the driver operate his motor vehicle should be in a much better position to determine driver competency than a physician who is expressing an opinion based solely upon a physical examination, the remedy is with the legislature, not the courts.

DOT argues that it clearly has the authority to conduct special operator's examinations pursuant to the provisions of Subsections (b) and (c) of Section 1514 of the Code. Just as clearly, such examinations are limited to 1) applications for renewal and 2) reexaminations ordered by a court. Neither of those circumstances apply here.[2]

Order reversed.

### ORDER

It is ordered that the order of the Court of Common Pleas of Lebanon County dated February 27, 1981, is hereby reversed and the order of the Director of the Bureau of Traffic Safety Operations of the Department of Transportation recalling Petitioner's operating license is hereby vacated.

---

[2] DOT contends in its brief that the Petitioner's license was valid until August 31, 1980, and that the first notice requiring Petitioner to take a special driver's examination was mailed to Petitioner five months prior to the expiration of Petitioner's license. On April 23, 1980, Petitioner's operating privileges were recalled. Clearly this recall occurred three months prior to the date when Petitioner's license had to be renewed; as a result, the renewal provisions of the Code do not apply. The question of whether the second examination, which was held on August 6, 1980, was authorized under the renewal provisions is a more difficult question if DOT's contention that Petitioner's license expired on August 31, 1980 is true. This issue, however, has not been raised by DOT before the trial court or this Court, nor does the record provide us with any evidence on this issue. We therefore need not deal with that question here. See Brose v. Easton Parking Authority, 44 Pa. Commonwealth Ct. 24, 403 A.2d 178 (1979).

DISSENTING OPINION BY JUDGE ROGERS:

I respectfully dissent. I do not believe that the legislature intended to, or did, withhold from the Department of Transportation the power to require a driver who it has reason to believe is physically or mentally unqualified, to submit to a road test of his ability to drive. The last sentence of Section 1519(a) empowers the department's appointees "to consider medical reports and testimony and determine the competency of the driver or the applicant to drive." The phrase, "determine the competency of the driver . . . to drive," seems to me to confer the power to determine the competency of a licensed driver reasonably believed to be unqualified by means other than reading medical reports, including the best means—that of observing him in the act of driving.

A de novo hearing was conducted by a judge who had all the evidence before him—the opinion of the driver's doctor that although his patient could not turn his head, he was competent to drive; and the State Trooper's observation of the driver pulling into intersections in the path of traffic. Believing that the driving test was authorized, I would affirm the hearing judge's order.