In Re: Appeal From the Settlement and Audit of the Auditors of Buckingham Township, Bucks County etc. Paul Silver and Donald W. Parker, Appellants.

Argued April 5, 1983, before President Judge CRUMLISH, JR. and Judges ROGERS, BLATT, CRAIG and MACPHAIL.

*Peter Hearn,* with him *Lynne E. Delanty* and *Joan A. Yue, Pepper, Hamilton & Scheetz,* for appellants.

*Anita F. Alberts,* with her *Robert W. Valimont, Power, Bowen & Valimont,* for appellees.

*Thomas L. Wenger, Wix, Wenger & Weidner,* for Amicus Curiae, Pennsylvania State Association of Township Supervisors.

OPINION BY JUDGE BLATT, June. 6, 1983:

The Buckingham Township Supervisors (supervisors) appeal here an order of the Court of Common Pleas of Bucks County which subjected them to a surcharge in the amount of $35,743.23[1] for monies unlawfully paid from Township funds. Section 545 of the Second Class Township Code (Township Code), Act of May 1, 1933, P.L. 103, *as amended,* 53 P.S. §65545.

It was stipulated that the supervisors, in their official capacities, approved[2] the expenditures here in question and that these expenditures were made in a

---

[1] The monies were spent for legal fees, the services of a public relations firm, a registered lobbyist, a fund raiser, as well as expenditures to cover business machine rental fees, secretarial expenses, copying costs, postage, and telephone expenses. In addition to the hiring of outside consultants, the record also indicates direct lobbying activities on the part of the supervisors.

[2] Supervisor Julian Perry voted against these expenditures, and is therefore not subject to the surcharge here.

successful effort to lobby before the state legislature for the passage of laws to amend various provisions of the Pennsylvania Municipalities Planning Code. Following the annual audit during which these expenditures came to light, several township citizens (taxpayers) filed a surcharge petition in the common pleas court. That petition was successful and the supervisors now seek review here.

The supervisors argue first that the trial court erred in not quashing the taxpayers' appeal from the auditor's report because only one of the taxpayers had signed the recognizance. They note that Section 554 of the Township Code, 53 P.S. §65554, provides in pertinent part:

> No appeal by a registered elector or taxpayer or officer shall be allowed unless the *appellant* shall enter into recognizance to prosecute the same with effect, and to pay all costs accruing thereon, . . . . (Emphasis added.)

The supervisors, however, cite *Mayo's Appeal,* 315 Pa. 269, 172 A. 848 (1934) and *Monroe County Auditor's Report,* 319 Pa. 63, 179 A. 752 (1935), and contend that the recognizance is fatally defective and therefore, that the trial court was without jurisdiction to hear the matter. These cases cited, however, were decided under an older version of the statute, since repealed, which provided in pertinent part:

> *Any ten or more taxpayers of the county may,* in behalf of such county, appeal from the report of its county auditors or controller to the court of common pleas or prosecute any suit or action in behalf of said county, or defend such county in any suit, process or action now pending, or that may be brought against such county, by appeals from county auditors' or controllers' reports or otherwise. If no ap-

peal is entered by county officials, the appeal by such taxpayers shall be entered within ninety days after the filing of such report in the court of common pleas. The *appellants* shall enter into recognizance, with two sufficient sureties, conditioned that the appellants shall prosecute said appeal with effect, and pay all costs that may accrue thereon. . . . (Emphasis added.)

Section 1035 of the General County Law, Act of May 2, 1929, P.L. 1278, *formerly* 16 P.S. §1035. This former statute required 10 or more taxpayers to bring the appeal and it refers to "appellants"[3] in the plural. Section 554 of the Township Code, on the other hand, does not require any special number of taxpayers and employs the word "appellant" in the singular. We believe, therefore, that the recognizance here concerned complies with the Township Code and that the trial judge was correct, therefore, in not granting the supervisors' motion to quash.

The supervisors then argue that, inasmuch as Section 702 of the Township Code, 53 P.S. §65725 gives the Township the power to adopt and enforce zoning ordinances, their lobbying expenditures to promote zoning legislation in the General Assembly is a power that is necessarily implied from the express grant of the zoning power. *See Borough of Scottdale v. National Cable Television Corp.*, 476 Pa. 47, 381 A.2d 859 (1977). They do not cite to any Pennsylvania authority for this proposition, however, and we must agree with the trial judge, that, although the activities here concerned might ultimately affect the enforcement of the Township's zoning laws, it cannot be said, as a

---

[3] Note that the taxpayers were considered the appellants at the common pleas level.

matter of law, that lobbying can, in any sense, be considered a power necessarily implied by the zoning power. And, as stated in *Kline v. Harrisburg,* 362 Pa. 438, 443-44, 68 A.2d 182, 184-85 (1949):

> Any fair, reasonable doubt as to the existence of power is resolved by the courts against its existence in the [municipal] corporation, and therefore denied.

The supervisors argue further that, because Section 2(1) of the Lobbying Registration Act (Act), Act of September 30, 1961, P.L. 1778, 46 P.S. §148.2 (ii)(C) excepts employees of political subdivisions of the Commonwealth, who act in an official capacity, from the registration requirements for lobbyists, hiring a lobbyist and lobbying otherwise was proper for them and will not make them subject to surcharge. Admittedly, local government officials do visit the State Capitol for the sake of presenting the views of their communities to the legislature, and this type of activity is in no sense evil or pernicious; in most cases, it is probably laudable. The expenditures here, however, were never budgeted and as the trial judge said in his opinion, they represented *24% of the total administrative costs* of the Township in 1978. We fail to see how Section 2(1) of the Act can be construed so as to support the supervisors' position. Again, where doubt exists, courts must resolve the issue of implied powers against the local government. *Kline.*

The supervisors also argue that Section 209.1 of the Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, 53 P.S. §10209.1, which gives a locally-created planning agency certain powers, *inter alia,* "promoting public interest in, and understanding of, the comprehensive plan and planning", authorizes their conduct. As provided in Section 202 of the MPC, 53 P.S. §10202, members of the planning

commission[4] "may be reimbursed for necessary and reasonable expenses." The supervisors here, however, have not offered sufficient evidence to prove that the expenses they incurred were "necessary and reasonable". And, under Section 559 of the Township Code, 53 P.S. §65559, the burden of proof lies upon the official whose accounts are in question, to establish the validity of charges. The supervisors here have failed to meet their burden, and further, as suggested by the taxpayers, to allow such expenditures without proof of the necessity and reasonableness of these charges, and not having them provided for by the budget, would effectively nullify the budgeting provisions of the Township Code.

Lastly, the supervisors challenge the surcharge on Constitutional grounds in that it is said to violate their First Amendment[5] right to petition for redress of grievances, the provisions of Art. I, §§7 and 20 of the Pennsylvania Constitution relating to free speech and to their right to petition, and their due process rights under the Fourteenth Amendment.[6] The taxpayers' action here, however does not abridge the rights of the supervisors to speak their views on legislation or to seek redress of grievances; it is concerned instead with the unfettered expenditure by public officials who did not have any express or implied authorization for such expenditure. No one seeks to deny the supervisors their right to free speech; rather, it is merely argued that, if the supervisors wished to lobby in Harrisburg, they could have proposed such activity at a Township meeting, given the taxpayers of the Town-

---

[4] Pursuant to Section 201 of the MPC, 53 P.S. §10201, the supervisors assigned these powers to themselves as "members appointed from the governing body" of the Township.

[5] U.S. Const. amend. I.

[6] U.S. Const. amend. XIV.

ship notice of their plans, and sought a reasonable amount of funds for this purpose in the normal course of procedure. Regarding the due process argument, this contention was never raised below and therefore cannot be considered here. *Brose v. Easton Parking Authority,* 44 Pa. Commonwealth Ct. 24, 403 A.2d 178 (1979).

We will affirm the order of the trial court.

ORDER

AND Now, this 6th day of June, 1983, the order of the Court of Common Pleas of Bucks County in the above-captioned matter is hereby affirmed.