**Frank SKLAR**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant.**

Commonwealth Court of Pennsylvania.

Argued June 17, 1999.

Decided Aug. 4, 1999.

Publication Ordered Dec. 28, 2000.

Elaine N. Blass, Harrisburg, for appellant.

Samuel P. Kamin, Pittsburgh, for appellee.

Before McGINLEY, Judge, KELLEY, Judge, and RODGERS, Senior Judge.

McGINLEY, Judge.

The Department of Transportation, Bureau of Driver Licensing (Bureau) appeals

from an order of the Court of Common Pleas of Allegheny County (trial court) which sustained the statutory appeal of Frank Sklar (Sklar) after the Bureau recalled his operating privileges because of a medical condition.

On October 3, 1993, Miguel J. Quintero, M.D. (Dr. Quintero), an opthamologist, submitted a medical report to the Bureau and indicated that Sklar suffered from "vision deficiency that affected the patient's [Sklar] ability, from a medical standpoint, to safely operate a motor vehicle." Initial Reporting Form, September 3, 1993; Reproduced Record (R.R.) at 156a. The Bureau notified Sklar to return his driver's license, "until satisfactory evidence is presented as to proof of competency as authorized by Section 1519c of the Vehicle Code." Bureau Letter to Sklar, December 16, 1993; R .R. at 157a–158a. Sklar appealed to the common pleas court.

The Bureau presented two reports from Dr. Quintero and rested. Sklar presented the deposition testimony of three medical specialists and testimony from a former State Police driver's examiner. Each witness testified that Sklar was a safe and competent driver using corrective lenses.[1] The trial court adopted Sklar's brief *in toto* and sustained the appeal.

The issues for our review are whether there was substantial evidence to support the trial court's determination that Sklar met the visual requirements to restore his operating privileges and whether the prohibition of the use of telescopic lens is discriminatory under Federal law.[2]

■ The Bureau recalled Sklar's operating privileges on the basis of Section 1519(c) of the Vehicle Code, 75 Pa.C.S. § 1519(c), which provides for mandatory recall of a driver's license when a medical report is received by the Bureau that indicates an operator cannot meet visual acuity and/or field of vision requirements. Section 83.3 of the Pennsylvania Code provides:

(c) *Visual Acuity of less than 20/70.*

A person with visual acuity of less than $20/70$ combined vision with best correction is not authorized to drive.

(d) *Vision Requirements.*

A person shall have a combined field of vision of at least 140 [degrees] in the horizontal meridian, excepting normal blind spots. . . .

(f) *Telescopic Lenses.*

Correction through the use of telescopic lenses [a telescopic low vision device] is not acceptable for purposes of meeting acuity requirements.

67 Pa.Code § 83.3

Dr. Quintero reported that Sklar's vision is not correctable to $20/70$ and that his visual acuity for the right eye was $5/200$, left eye was $20/400$, for both eyes $20/400$, corrected to $20/200$ with a field of vision of 140 degrees, and that telescopic lenses were "only of limited help". Dr. Quintero Report, October 3, 1993; R.R. at 156a.

Sklar presented the testimony of Paul B. Freeman, O.D. (Dr. Freeman), a board-certified optometrist who specializes in low vision. Dr. Freeman opined that Sklar has a visual acuity of $20/400$ in the right eye and $20/200$ in the left eye corrected with lens to a combined central visual acuity of $20/200$, and that his combined field of vision was 140 degrees in the horizontal meridian. Deposition of Paul B. Freeman, O.D., March 31, 1995 (Dr. Freeman Deposition) at 8, 19, 24; R.R. at 14a, 25a, 30a. Dr. Freeman stated that the use of a telescopic lens[3] would correct Sklar's vision to $20/40$

---

1. The record indicates that Sklar had no violations or accidents in 25 years and that his condition existed since 1951.

2. Our scope of review when the trial court takes *de novo* evidence is whether constitutional rights were violated or whether the court manifestly abused its discretion or committed an error of law. *McLaughlin v. Centre County Housing Authority,* 151 Pa.Cmwlth. 292, 616 A.2d 1073, 1074 n. 3 (1992).

3. The telescopic lens provides a magnified central field of between eight and twenty degrees. A bioptic lens consists of a miniature

with no effect on his peripheral vision. Dr. Freeman Deposition at 26–27, 36; R.R. at 32a–33a, 41a.

Sklar next presented the testimony of Chris Cakanac, M.D. (Dr. Cakanac), an optometrist who specializes in low vision and who was referred by Dr. Quintero. Dr. Cakanac opined that Sklar meets the Bureau's field of vision requirements and that unconventional lenses would correct his visual acuity to better than 20/70. Deposition of Chris Cakanac, M.D., July 5, 1995 (Dr. Cakanac Deposition) at 9–10; R.R. at 56a–57a. Dr. Cakanac opined that the Bureau's regulations bear no relationship to an individual's driving ability. Dr. Cakanac Deposition at 14; R.R. at 61a.

Sklar also presented the testimony of Robert B. Noland, M.D. (Dr. Noland), a board-certified ophthalmologist who treated Sklar since 1981. Dr. Noland testified that Sklar's visual acuity with a bioptic lens is better than $\frac{20}{70}$ and that his field of vision exceeds 140 degrees. Deposition of Robert B. Noland, October 21, 1996 (Dr. Noland Deposition) at 7–8; R.R. at 87a–88a. Dr. Noland opined that the use of a special bioptic lens would improve Sklar's vision to $\frac{20}{70}$ with no effect on his ability to operate a vehicle and no decrease in his field of vision. Dr. Noland Deposition at 10, 13; R.R. at 90a, 93a. Dr. Noland stated that the Bureau's visual requirements are arbitrary without conducting an actual driving test. Dr. Noland Deposition at 18–20; R.R. at 98a–101a.

Joseph Kilchenstein (Kilchenstein), a former Pennsylvania State Police driver's examiner who operates his own driving school, testified that he personally road-tested Sklar on two occassions, in heavy city traffic and at night, that Sklar was wearing conventional lenses and that he is a safe driver. Notes of Testimony, November 14, 1996 (N.T.) at 26; R.R. at 137a.

The Bureau must establish by a preponderance of the evidence that the licensee was incompetent to drive as of the date of the examination. *Klotz v. Department of Transportation, Bureau of Driver Licensing,* 77 Pa.Cmwlth. 134, 465 A.2d 113 (1983). The Bureau satisfied its burden[4] and contends that the regulations set forth in the Pennsylvania Code are not merely advisory but set forth the minimum visual standards for operators as promulgated under the express grant of legislative power. *See Dare v. Department of Transportation, Bureau of Driver Licensing,* 682 A.2d 413 (1996).

In *Dare,* James P. Dare (Dare) contended that the field of vision requirement found at 67 Pa.Code § 83.3 was not a *per se* competency standard, but rather set forth factors to be considered by the court. This Court determined that the visual standards of the regulations were promulgated under an express grant of legislative power with the force and effect of a statute and that an operator who failed to meet the standards is not competent to drive. *Id.* at 414, 415. Because the Bureau established that Sklar was incompetent to drive in accordance with the regulations, and Sklar failed to present evidence that he met the Bureau's visual standards, we conclude that the trial court erred in sustaining Sklar's appeal.

■ Next, the Bureau contends that the trial court erred in determining that the prohibition of the use of telescopic lenses discriminates against Sklar in violation of Federal law. We agree. Sklar has not established the requisite elements to establish unlawful discrimination. A person is considered disabled if he has: a) a physical or mental impairment that substantially limits one or more of the major life

---

telescope mounted upon conventional corrective lenses. Images within this field of vision appear larger and are therefore easier to resolve. *See Sharon v. Larson,* 650 F.Supp. 1396 (E.D.Pa.1986).

4. We note that medical reports are admitted without corroboration and do not constitute hearsay. *Ploof v. Department of Transportation, Bureau of Driver Licensing,* 139 Pa. Cmwlth. 235, 590 A.2d 1318 (1991).

activities, b) a record of such impairment, or c) being regarded as having such an impairment. *McDonald v. Commonwealth of Pennsylvania*, 62 F.3d 92 (3rd Cir. 1995). Major life activities are defined as, "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 45 C.F.R. § 84.3(j)(2)(ii) (1992). *See Strathie v. Department of Transportation*, 716 F.2d 227 (3rd Cir.1983). Recently, our United States Supreme Court held that the determination of whether an individual is disabled should be made with reference to measures, including corrective lenses, that mitigate the individual's impairment, and that impairment does not substantially limit a major life activity if it is corrected. *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450, 1999 U.S. Lexis 4371 (U.S.Colo.1999). Sklar did not testify and presented no evidence to identify any 'major life activity' that his vision substantially limits.

Accordingly, we reverse.

Judge KELLEY dissents.

Senior Judge RODGERS concurs in the result only.

### ORDER

AND NOW, this 4th day of August, 1999, the order of the Court of Common Pleas of Allegheny County at the above captioned-matter is reversed.