Shawn M. METER

v.

COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant.

Commonwealth Court of Pennsylvania.

Argued Sept. 16, 2011.

Decided Jan. 10, 2012.

Publication Ordered May 8, 2012.

Philip M. Bricknell, Assistant Counsel, Harrisburg, for appellant.

Tami L. Fees, Bellefonte, for appellee.

BEFORE: COHN JUBELIRER, Judge, and LEAVITT, Judge, and BROBSON, Judge.

OPINION BY Judge COHN JUBELIRER.

The Department of Transportation, Bureau of Driver Licensing (Department) appeals from the Order of the Court of Common Pleas of Centre County (trial court) sustaining the appeal of Shawn M. Meter (Licensee) from a recall of his driver's license for incompetency pursuant to Sections 1519(a) and 1519(c) of the Vehicle Code, 75 Pa.C.S. §§ 1519(a) and 1519(c).

On July 25, 2010, Licensee was involved in an automobile collision resulting in the death of his passenger. Licensee was flown by helicopter to the Altoona Regional Hospital trauma unit for treatment of his injuries. At some point during Licensee's treatment, a physician's assistant (P.A.) completed a medical report asserting that alcohol and drug or substance abuse affected Licensee's ability, from a medical standpoint, to safely operate a motor vehicle.[1] Based upon the medical report, the Department recalled Licensee's driver's license and notified Licensee of the recall in a letter stating the following:

> This is an official **Notice of the Recall of your Driving Privilege** as authorized by Section 1519(c) of the Pennsylvania Vehicle Code. Penn DOT has received medical information indicating you have a Substance Use condition, which prevents you from safely operating a motor vehicle.
>
> As of 08/13/2010, you may no longer drive. Your driving privilege is hereby recalled *until you have demonstrated your condition meets PennDOT's minimum medical standards.*
>
> . . . .
>
> *This action will remain in effect until PennDOT receives medical information indicating that your condition has improved, and you are able to safely operate a motor vehicle.*
>
> If you feel our records are incorrect, you may have your health care provider submit updated information detailing your medical condition.
>
> . . . .
>
> You have the right to appeal to the Court of Common Pleas (Civil Division) within thirty (30) days of the mail date of this notice.

---

1. According to Licensee, "The physician assistant had never met the [Licensee] previously and completed the form based on the sole fact that the [Licensee] was in an accident and had alcohol in his system." (Licensee's Br. at 2.)

(Notice of Recall of Driving Privilege, August 13, 2010 (Recall Notice) at 1, R.R. at 7a.) (Emphasis added).[2]

Pursuant to Section 1550 of the Vehicle Code,[3] Licensee appealed his license recall to the trial court on September 10, 2010. The trial court granted Licensee's request for supersedeas of the recall of his license on September 24, 2010 [4] and, on December 10, 2010, a *de novo* hearing took place before the trial court. At the hearing, the trial court accepted into evidence the Department's packet of certified documents that included the medical report, the Recall Notice, and a certified copy of Licensee's driving record. (Department's Ex. 1.) Counsel for Licensee objected to the content of the medical report, but acknowledged that the Department was permitted to submit the report for the fact that it was received by them. (Hr'g Tr. at 9, R.R. at 20a.) The trial court stated that the Department could not prove that Licensee had a substance problem by means of the medical report and further stated that the Department is not required to prove that Licensee had a substance abuse problem but, rather, only must prove that the Department received the medical report to establish its prima facie case. (Hr'g Tr. at 11, R.R. at 22a.) In rebuttal to the medical report and his driving record, Licensee presented his mother as a witness, who testified as follows:

Q. Since the accident, have you seen your son consume any alcohol?

A. No, Sir, I have not.

Q. Was your son prescribed any medicines after the accident?

A. Yes.

Q. Other than those prescription medicines, have you seen him consume any illicit substances?

A. No.

(Hr'g Tr. at 21–22, R.R. at 32a–33a.) Licensee's mother also testified that "[h]e drove fine with me in the car," had driven her to a doctor's appointment and to the mall, and drove her husband to Pittsburgh. (Hr'g Tr. at 22, R.R. at 33a.) Licensee did not testify and he did not submit any medical report from any health care provider.

By Order dated January 10, 2011, the trial court sustained Licensee's appeal. The Department filed a Notice of Appeal on January 21, 2011. In response, the trial court ordered the Department to file a Statement of Matters Complained of on Appeal, pursuant to Pa. R.A.P.1925(b), and, thereafter, filed its Opinion in Response to Matters Complained of on Appeal, pursuant to Pa. R.A.P.1925(a).

█ In granting Licensee's license recall appeal, the trial court found that the Department failed to satisfy its burden of proving that Licensee was medically

---

2. The Department asserts that enclosed with the Recall Notice of August 13, 2010, was a Substance Use Form to be completed by Licensee's health care provider and that this form was again provided to Licensee on or about October 19, 2010, but that Licensee did not return this form to the Department. (Department's Br. at 5–6.)

3. 75 Pa.C.S. § 1550. Section 1550(a) provides in relevant part:

(a) **General rule.**—Any person who has been denied a driver's license, whose driver's license has been canceled or whose operating privilege has been recalled, suspended, revoked or disqualified by the department shall have the right to appeal to the court vested with jurisdiction of such appeals by or pursuant to Title 42 (relating to judiciary and judicial procedure).

75 Pa.C.S. § 1550(a).

4. The Department admits that, at the time of the supersedeas hearing, it did not know that a fatality had been involved in Licensee's accident of July 25, 2010 "or [it] would have brought that up at the time." (Hr'g Tr. at 7–8, R.R. at 18a–19a.)

incompetent to drive. The trial court reasoned that, although Licensee's driving record would be "highly relevant to a license revocation due to driving infractions," it was *irrelevant* to Licensee's alleged medical condition, stating that driving records do not constitute evidence of a licensee's health. (Trial Court Op. at 3.) The trial court further found that the Department's "only relevant evidence in this case was the [medical report], which was filled out by a trauma unit physician's assistant who treated [Licensee] one time during a medical emergency" who "had, at best, an incomplete picture regarding [Licensee's] use of alcohol." (Trial Court Op. at 3–4.) The trial court determined that the medical report was sufficient to establish a prima facie case, but found the value of the report was low and, therefore, "only a relatively small amount of evidence was necessary to rebut this scant evidence of medical incompetence." (Trial Court Op. at 4.) The trial court concluded that this case was analogous to *Byler v. Department of Transportation, Bureau of Driver Licensing,* 883 A.2d 724, 729 (Pa.Cmwlth. 2005) (concluding that lay witness testimony was competent evidence sufficient to rebut the Department's prima facie case of medical incompetence), especially here, where the Department's evidence of medical incompetency was so limited, and Licensee's mother's testimony was similar to the lay testimony offered in *Byler.* (Trial Court Op. at 5.) The Department now appeals to this Court.[5]

On appeal, the Department argues that: (1) Licensee's mother's testimony did not constitute substantial evidence sufficient to rebut the Department's prima facie case of Licensee's medical incompetency; (2) even if this Court concludes that Licensee's mother's testimony was sufficient to rebut the prima facie case, the Department nonetheless met its burden of proving Licensee's continued medical incompetence with evidence of an unsafe driving history and arrest records for controlled substance violations; and (3) the statutory appeal provided by Section 1519(c) of the Vehicle Code does not permit a licensee to avoid the Department's requirement to submit a substance use form from a medical provider under Section 1519(a).

■ The Department first argues the trial court erred as a matter of law when it determined that the Department did not meet its burden of proving Licensee's medical incompetency to drive a motor vehicle. The Department maintains that Licensee's failure to testify entitled the Department to an inference or a presumption that Licensee remained medically incompetent to drive, pursuant to *Satler v. Department of Transportation, Bureau of Driver Licensing,* 670 A.2d 1205, 1207 (Pa. Cmwlth.1996) (stating that "[i]t is well settled that the failure to call an available witness who is within one party's control and has knowledge pertaining to a material issue may, if not explained, raise an inference or presumption that the absent witness' testimony would have been adverse to that party"). The Department further asserts that Licensee's sole evidence was his mother's testimony, which was incompetent[6] to rebut on the issue of medical competence.

5. In reviewing a *de novo* appeal to the trial court, our scope of review is limited to whether constitutional rights were violated, whether the trial court abused its discretion or committed an error of law. *Sklar v. Department of Transportation, Bureau of Driver Licensing,* 764 A.2d 632 (Pa.Cmwlth.1999).

6. The Department argues that:

The terms[ ] "substantial evidence" and "competent evidence" are used interchangeably[ ] apparently without any difference in meaning. *See, e.g., Petrocsko v. Department of Transportation, Bureau of*

■ Section 1518(b) of the Vehicle Code provides that health care providers shall report to the Department, in writing, the full name, date of birth, and address of every person over 15 years of age diagnosed as having any specified disorder or disability within ten days. 75 Pa.C.S. § 1518(b). The Department's regulation at 67 Pa.Code § 83.5 (relating to disqualifying medical conditions other than epilepsy) provides, in relevant part:

(b) *Disqualification on provider's recommendation.* A person who has any of the following conditions will not be qualified to drive if, in the opinion of the provider, the condition is likely to impair the ability to control and safely operate a motor vehicle:

. . . .

(7). Use of any drug or substance, including alcohol, known to impair skill or functions, regardless whether the drug or substance is medically prescribed.

67 Pa.Code § 83.5(b)(7). Section 1519(b) provides for the confidentiality of reports received by the Department pursuant to Section 1519(a), and further provides that such reports "shall be admitted in proceedings under section 1550 (relating to judicial review)." 75 Pa.C.S. § 1519(b). Section 1519(c) of the Vehicle Code directs the Department to recall the driving privilege of any person deemed incompetent and specifically provides as follows:

Recall or suspension of operating privilege.—The department shall recall the operating privilege of any person whose incompetency has been established under the provisions of this chapter. *The recall shall be for an indefinite period until satisfactory evidence is presented to the department in accordance with regulations to establish that such person is competent to drive a motor vehicle.* The department shall suspend the operating privilege of any person who refuses or fails to comply with the requirements of this section until that person does comply and that person's competency to drive is established. Any person aggrieved by recall or suspension of the operating privilege may appeal in the manner provided in section 1550. The judicial review shall be limited to whether the person is competent to drive in accordance with the provisions of the regulations promulgated under section 1517 (relating to Medical Advisory Board).

75 Pa.C.S. § 1519(c). (Emphasis added.) The Department can meet its initial burden of presenting a prima facie case of medical incompetency by introducing the medical report that was submitted to the Department by a health care provider. *Ploof v. Commonwealth of Pennsylvania,* 139 Pa.Cmwlth. 235, 590 A.2d 1318, 1320 (1991). Once the Department establishes a prima facie case, the burden then shifts to the licensee to establish that he was competent to drive on the date of the recall or has since become competent to drive. *McKelvy v. Department of Transportation, Bureau of Driver Licensing,* 814 A.2d 843, 846 (Pa.Cmwlth.2003). "The burden of persuasion never leaves [the Department], but the medical report itself is sufficient to meet and overcome [the

*Driver Licensing,* 745 A.2d 714, 716 (Pa. Cmwlth.2000) ("substantial evidence"); citing *Brown v. Department of Transportation, Bureau of Driver Licensing,* 738 A.2d 71, 72 n. 2 (Pa.Cmwlth.1999) ("substantial evidence"); citing *Gombar v. Department of Transportation, Bureau of Driver Licensing,*

678 A.2d 843, 847 n. 7 (Pa.Cmwlth.1996) . . . ("competent evidence"). *See also Department of Transportation, Bureau of Driver Licensing v. Holsten,* 150 Pa.Cmwlth. 1, 615 A.2d 113, 114 (1992) ("substantial, competent evidence").
(Department's Br. at 17–18 n. 6.)

Department's] initial burden to establish a prima facie case." *Reynolds v. Department of Transportation, Bureau of Driver Licensing,* 694 A.2d 361, 364 (Pa.Cmwlth. 1997). Thus, here, the Department established its prima facie case under Section 1519(c) when it presented the medical report to the trial court. Licensee, in reliance upon *Byler,* then attempted to meet his burden by producing his mother's testimony that, since the accident, she had not *seen* her son consume alcohol or any illicit substances, that he drove her to a doctor's appointment and to the mall, and drove her husband to Pittsburgh. (Hr'g Tr. at 22, R.R. at 33a.)

In *Byler,* the licensee's family physician had submitted a letter to the Department stating that his 79–year old patient was an alcoholic with significant cerebellar degeneration, and should not be driving a car. *Byler,* 883 A.2d at 725. The Department then recalled the licensee's driver's license and the licensee appealed. *Id.* At the hearing, both the licensee and his neighbor testified regarding the licensee's consumption of alcohol and his driving record. *Id.* at 725–26. The licensee testified that he had not had a moving violation in 58 years as a licensed driver and was involved in only two accidents forty years prior that were caused by other drivers. *Id.* at 725. He further testified that he led a sedentary life, spending most of his time at home, had reduced his drinking over the past three or four years, drinks only two drinks between 4:00 p.m. and the time he retires to bed, never drinks outside the home, and never drinks and drives. *Id.* His 83–year old neighbor also testified that she saw the licensee every day, that twice each week the licensee drove her to the grocery store or ran other errands for her, and that she had never seen him drive after drinking. *Id.* at 726. The neighbor further stated that licensee never visited bars or drank outside of his home. The

trial court found both the licensee and his neighbor credible that the licensee was a safe driver, did not drink and drive, and concluded that "[t]here was no evidence of behavioral manifestations of impairment in the operation of a motor vehicle." *Id.* On appeal, this Court affirmed, noting that the licensee emphasized his "safe driving record." *Id.* at 727. Also significant to this Court was the fact that the licensee's testimony, which was corroborated by his neighbor, "pertained to the *underlying facts* regarding [licensee's] lifestyle and the frequency and amount of his drinking, and [licensee and neighbor] were competent to testify to such common facts." *Id.* at 729. (Emphasis in original.) Thus, there was credited evidence of the licensee's safe driving, and the frequency and amount of the licensee's drinking, which was sufficient to rebut the Department's prima facie case.

The present case is distinguishable from *Byler* for three reasons: (1) whereas Byler had a fifty-eight year driving record with no moving violations or alcohol-related accidents, Licensee's brief driving record contains two recent accidents, one being the July 25, 2010 fatal accident, (Department's Ex. 1, R.R. at 54a), and the other being a 2007 accident resulting in injury, (Department's Ex. 1, R.R. at 53a), a 2009 charge for underage DUI, and multiple speeding violations in low speed areas; (2) whereas the licensee in *Byler* testified about his "lifestyle and the frequency and amount of his drinking," which was corroborated by his neighbor, *Byler,* 883 A.2d at 729, here, Licensee's mother was the sole witness; and (3) Licensee's mother stated that she had not *seen* Licensee consume alcohol and drive, notably not that he had *not done so.* Therefore, we conclude that Licensee's mother's testimony was insufficient and incompetent to rebut the Department's prima facie case.

■ Next, the Department argues that the trial court erred as a matter of law when it found Licensee's driving record irrelevant and, therefore, failed to consider whether this evidence could have overcome Licensee's evidence. The Department contends that even if Licensee's mother's testimony had rebutted the prima facie case, the Department nonetheless met its burden by submitting evidence of Licensee's driving records. The Department's evidence consisted of the following certified documents: Licensee's driving record, the medical report, the Department's Recall Notice, and a substance use form to be completed by Licensee's health care provider. (Department's Ex. 1, R.R. at 46a–55a.) Licensee's driving record consisted of: (1) a July 25, 2010 accident involving the fatality of Licensee's passenger; (2) a July 9, 2009 arrest as a minor for driving under the influence of alcohol or a controlled substance with an accelerated rehabilitative disposition; (3) two speeding violations in low speed areas; and (4) an October 30, 2007 automobile accident resulting in injury. The trial court determined that Licensee's driving record was "irrelevant to [Licensee's] alleged medical condition because driving records cannot constitute evidence of a driver's health," and "are irrelevant to medical competency." (Trial Court Op. at 3, 5 n. 2.)

In reviewing this issue, we first take note that Pennsylvania Rule of Evidence 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Pa. R.E. 401. Whether evidence is relevant or not "is to be determined by the court in the light of reason, experience, scientific principles and the other testimony offered in the case." Pa. R.E. 401, Comment. The issue here is whether Licensee's use of drugs or alcohol is a condition that prevents him from safely operating a motor vehicle. Licensee, who was 21 years old when he had the fatal accident which resulted in the medical report being submitted to the Department, also had an underage DUI,[7] another previous accident involving injury, and two speeding violations. While driving records will not always be relevant to the existence of a medical condition, such records *can* be relevant where the medical condition involves drug and alcohol abuse. Based on the medical report indicating that Licensee had an alcohol or substance use condition which prevented him from safely operating a motor vehicle and Licensee's certified driving record, we conclude, in the light of experience and reason, that such a driving record *would* tend to make the existence of Licensee's alcohol or substance use condition more probable than it would be without the evidence. Pa. R.E. 401. Therefore, the trial court erred in concluding that such evidence is *never* relevant and, in this case, it is relevant.

Accordingly, we reverse the Order of the trial court and direct that the recall of Licensee's driving privilege be reinstated.[8]

### ORDER

NOW, January 10, 2012, the Order of the Court of Common Pleas of Centre

---

7. We note that according to the Licensee's driving history, he had received a 90–day suspension for the DUI and his driver's license was reinstated within weeks of the fatal accident.

8. Because of our disposition of this case, we do not reach the Department's final argument that the statutory appeal provided by Section 1519(c) of the Vehicle Code does not permit a licensee to avoid the Department's requirement to submit a substance use form from a medical provider under Section 1519(a).

County in the above-captioned matter is hereby **REVERSED** and the recall of the driving privilege of Shawn M. Meter is hereby reinstated.

### DISSENTING OPINION BY Judge LEAVITT.

Respectfully, I dissent. The trial court held that the documentary evidence presented by the Department of Transportation (PennDOT) did not prove that Shawn M. Meter (Licensee) was medically incompetent to drive by reason of alcoholism. The trial court, as fact finder, has the discretion and responsibility to weigh the evidence, and I do not believe the court abused its discretion in this exercise. The more serious issue presented by this case is PennDOT's disregard for the statutory procedure by which medical incompetency to drive is to be determined.

The Vehicle Code has established a specific procedure for recalling a driver's license from one who is medically incompetent to drive. Section 1519(a) of the Vehicle Code [1] authorizes PennDOT to require a licensee to undergo a physical examination by a medical professional of PennDOT's choosing, where PennDOT has cause to believe the licensee is medically incompetent to drive. If PennDOT chooses the examining professional, the licensee then has the right to choose another medical professional to do a medical examination. The reports of both examinations are then evaluated by a "qualified person" appointed by PennDOT "to determine the competency of the driver ... to drive." 75 Pa.C.S. § 1519(a). If the qualified expert appointed by PennDOT determines the driver is medically incompetent, the licensee may appeal that determination to a court of common pleas. 75 Pa.C.S. § 1519(c).[2] If the appeal is

1. It states:

   General rule.—*The department,* having cause to believe that a licensed driver or applicant may not be physically or mentally qualified to be licensed, *may require the applicant or driver to undergo one or more of the examinations* authorized under this subchapter in order to determine the competency of the person to drive. *The department may require the person to be examined by a physician,* a certified registered nurse practitioner, a physician assistant or a licensed psychologist *designated by the department* or may require the person to undergo an examination by a physician, a certified registered nurse practitioner, a physician assistant or a licensed psychologist of the person's choice. *If the department designates the physician,* a certified registered nurse practitioner, a physician assistant or licensed psychologist, *the licensed driver or applicant may, in addition, cause a written report to be forwarded to the department by a physician,* a certified registered nurse practitioner, a physician assistant or a licensed psychologist *of the driver's* or applicant's *choice.* Vision qualifications may be determined by an optometrist or ophthalmologist. The department shall ap-

   point one or more qualified persons who shall consider all medical reports and testimony in order to determine the competency of the driver or the applicant to drive.
   75 Pa.C.S. § 1519(a) (emphasis added).

2. It states:

   Recall or suspension of operating privilege.—The department shall recall the operating privilege of any person whose incompetency has been established under the provisions of this chapter. *The recall shall be for an indefinite period until satisfactory evidence is presented to the department in accordance with regulations to establish that such person is competent to drive a motor vehicle.* The department shall suspend the operating privilege of any person who refuses or fails to comply with the requirements of this section until that person does comply and that person's competency to drive is established. *Any person aggrieved by recall or suspension of the operating privilege may appeal in the manner provided in section 1550.* The judicial review shall be limited to whether the person is competent to drive in accordance with the provisions of the regulations promulgated under section 1517 (relating to Medical Advisory Board).

unsuccessful, PennDOT's recall of a license remains in effect until the licensee proves that he is competent to drive. 75 Pa.C.S. § 1519(c).

In a recall appeal proceeding, it is PennDOT's burden to prove by a preponderance of the evidence that the licensee is medically incompetent to drive as of the date of the recall. *Byler v. Department of Transportation, Bureau of Driver Licensing,* 883 A.2d 724, 728 (Pa.Cmwlth.2005), *petition for allowance of appeal denied,* 588 Pa. 784, 906 A.2d 544 (2006). PennDOT may make a *prima facie* case of incompetency "by the introduction of the medical report which [it] relied upon in recalling the driver's license." *Id.* The burden then shifts to the licensee to present evidence to rebut the finding of PennDOT's appointed expert or present evidence "that he has become competent to drive since the time that his license was recalled...." *Id.* If the licensee is successful, the burden shifts back to PennDOT to prove incompetency through testimonial evidence. *Id.* Notwithstanding the shining burden, the burden of persuasion remains with PennDOT. *Id.*

Here, the trial court held that PennDOT failed to prove Licensee's incompetency.[3] In support of recall, PennDOT offered three pieces of documentary evidence: Licensee's driving record; PennDOT's recall notice; and the "Initial Reporting Form" that gave PennDOT cause to believe Licensee was incompetent to drive. *See* Reproduced Record at 46a–55a (R.R. ___). The trial court found this evidence insufficient.

The trial court held that the only evidence relevant to Licensee's medical competency was the Initial Reporting Form. Incompetency must be proven by medical reports or medical testimony. *Knoche v. Department of Transportation,* 70 Pa. Cmwlth. 430, 453 A.2d 690, 693 (1982).

PennDOT's medical report, entitled "Initial Reporting Form," is a one-page form created by PennDOT for receipt of provider information about "your patient's medical fitness to safely operate a motor vehicle...." R.R. 49a. The form has four blocks for reporting the information sought by PennDOT. In Section A, the provider sets forth the name and address, and other identifying information, about the patient. Section B requests a "diagnosis of disorder or disability," followed by 12 specific medical conditions, ranging from "cardiovascular disease" and "vision deficiency" to "alcohol abuse," with boxes for a checkmark and a space for comments. *Id.* The form then asks: "Do these conditions affect the patient's ability, from a medical standpoint only, to safely operate a motor vehicle?" followed by a "yes" and "no" box. *Id.* Section C requests information about seizure disorder, and Section D requests information about the provider filling out the form. *Id.*

Here, the Initial Reporting Form was completed by a physician's assistant who examined Licensee at a hospital on the night of his July 25, 2010, accident. As noted by the trial court, this was the first and only time that the physician's assistant met or examined Licensee. The form does not contain a single declarative sentence about Licensee's diagnosis or disorder. The physician's assistant simply entered three checkmarks. The first was a check for "Alcohol Abuse," a second was for

75 Pa.C.S. § 1519(c) (emphasis added).

**3.** The trial court is the ultimate finder of fact and our review is limited to determining whether the necessary findings of fact are supported by the evidence, whether an error of law was committed or whether an abuse of discretion occurred. *Byler,* 883 A.2d at 727 n. 2, 729.

"Drug or Controlled Substance Abuse," and a third was for a "yes" in response to the question about whether Licensee's medical condition affected his driving ability. R.R. 49a.

The Initial Reporting Form was sufficient to give PennDOT "cause to believe" Licensee was medically incompetent and, thus, "require" him to undergo an examination by a medical professional of Penn-DOT's choosing. 75 Pa.C.S. § 1519(a). However, PennDOT treated it as the report of the medical examination done by the medical professional of its choosing.[4]

Under the Vehicle Code, PennDOT should not have issued its recall notice until *after* Licensee was given the opportunity to provide PennDOT's appointed "qualified person" with a second medical report, *i.e.,* one by a physician of Licensee's choosing. 75 Pa.C.S. § 1519(a). PennDOT's qualified person must consider "all medical reports" before he determines "the competency of the driver or the applicant to drive." *Id.* By making the recall decision solely on the basis of the Initial Reporting Form, and not giving Licensee a chance to submit a medical report, Penn-DOT's "qualified person" acted in derogation of the procedure mandated in Section 1519(a).

PennDOT offered the Initial Reporting Form as the medical report evidence contemplated by 75 Pa.C.S. § 1519(a), and it was admitted as PennDOT's *prima facie* case. However, the trial court assigned little value to the medical report, explaining:

> The Court believes the value of the medical opinion in this case (the Initial Reporting Form completed by the physician's assistant), is relatively low because the physician's assistant had, at best, an incomplete picture regarding [Licensee's] use of alcohol. The Court simply does not believe the physician's assistant could have ascertained with any precision, whether [Licensee] has an alcohol-related medical condition that renders him incapable of safe driving during this single instance of emergency treatment.

Opinion Filed in Response to Matters Complained of on Appeal, at 4. Accordingly, the trial court held that "only a relatively small amount of evidence was necessary to rebut this scant evidence of medical incompetence." *Id.*

Licensee's mother testified that she had not observed Licensee consume any alcohol since the accident on July 25, 2010. Further, since the accident, she had observed Licensee operating a vehicle on numerous occasions, including times when he drove her. She testified that he drove safely. The trial court credited her testimony, and her testimony directly contradicted the statements in the Initial Reporting Form that Licensee abused alcohol and that this medical disorder affects his ability to drive safely. I agree with the trial court that the mother's testimony, who, as in *Byler,* was a lay witness who knew Licensee, rebutted PennDOT's medical report, which amounted to no more than three checkmarks.

The majority reverses, in part, because it believes that the trial court erred in not assigning PennDOT's recall notice and Licensee's driving history probative evidentiary value. I would affirm the trial court's evidentiary rulings.

Licensee's driving history consisted of two 2007 speeding violations and a 2009

---

4. If so, PennDOT did not explain how it required Licensee to undergo a medical examination on the night of his accident, let alone how or why it chose the physician's assistant who did the exam for medical competency.

DUI when Licensee was 20 years old, for which he received ARD.[5] As noted by the trial court, a licensee's driving record can support a license recall based on driving infractions. *See* 75 Pa.C.S. § 1532 (suspension based on the commission of certain designated acts) and 75 Pa.C.S. § 1539 (suspension following accumulation of eleven or more violation points). However, Licensee's recall was not based on his driving record but on his medical condition.

The trial court held that Licensee's driving record was not relevant to his medical competency as of the date of recall. I agree. First, a DUI does not prove the medical disorder of alcoholism. If it did, then PennDOT would initiate recall proceedings against every licensee convicted of DUI. Second, a DUI does not prove that a licensee is still an alcoholic a year after the DUI. Here, there was a gap of thirteen months between Licensee's DUI and the subsequent report of his alcoholism by a physician's assistant who examined him on one occasion.

I also agree with the trial court's finding that PennDOT's recall notice in and of itself had no evidentiary value with respect to the substantive issue of Licensee's medical competency to drive. PennDOT's recall notice did not provide any information about Licensee's physical or mental condition; it merely gave Licensee notice that his license was being recalled and informed him of his appeal rights. The recall notice has value as background information, but it is not evidence that Licensee was, in truth, medically incompetent as asserted in the recall notice.

Finally, the majority would reverse the trial court's holding that Licensee rebutted PennDOT's *prima facie* case. Again, I believe the trial court got it right.

In *Byler*, the licensee's family physician notified PennDOT by letter that the licensee was an alcoholic and suffered from cerebellar degeneration.[6] *Byler*, 883 A.2d at 725. As noted, the licensee countered these claims with his testimony and that of his neighbor that when he drank, he stayed home and did not drive. The trial court found that this evidence was not sufficient to rebut PennDOT's evidence, which was a "two-sentence" letter from the licensee's physician.[7]

On appeal to this Court, PennDOT argued that the lay testimony of licensee and his neighbor was not sufficient to overcome its medical evidence. We disagreed, noting

> that nothing in the applicable statutory or regulatory provisions or in the case precedents ... requires that only medical evidence may be presented by the licensee to rebut a *prima facie* case of

---

**5.** A minor is guilty of driving while intoxicated if his blood or breath alcohol concentration is .02% or higher. 75 Pa.C.S. § 3802(e).

**6.** Simply proving a licensee's alcoholism does not prove inability to drive safely. In *Byler*, 883 A.2d 724, this Court explained that it is not enough for PennDOT to establish that the licensee is an alcoholic; it must also prove that "a person's alcoholism is 'likely to impair the ability to control and safely operate a motor vehicle[.]'" *Id.* at 726 (quoting 67 Pa.Code § 83.5(b)). In *Byler*, the licensee acknowledged his alcohol abuse disorder, but he testified that he did his drinking at home

and never drove after drinking. His neighbor confirmed the licensee's account of his drinking behavior, and the trial court credited this testimony. We affirmed, holding that PennDOT must prove that a licensee's alcoholism actually affects his driving. PennDOT offered no evidence that, as of the date of its recall, the licensee was driving under the influence of alcohol.

**7.** Notably, no evidence was presented on the question of the licensee's cerebellar degeneration.

the license's incompetency based on a medical provider's report. *Id.* at 728. We reasoned that PennDOT's medical report provided no details about the diagnosis of alcoholism or offered any pertinent facts about the licensee's driving ability. By contrast, the licensee and his neighbor presented facts regarding his lifestyle and driving habits. We held that it was within the province of the trial court, as factfinder, to find licensee's evidence more persuasive and credible than PennDOT's medical report.

Here, as in *Byler*, PennDOT's Initial Reporting Form contained no explanation for the medical opinions expressed therein.[8] The majority attempts to distinguish *Byler* by noting that there the licensee presented testimony about his lifestyle and drinking habits, which was corroborated by his neighbor. In the present case Licensee did not testify. It is for the trial court to evaluate the significance of Licensee's decision not to testify, not this Court.[9]

The majority also notes that Licensee's mother testified that she had not *seen* her son consume alcohol or illicit drugs, not that he had not actually done so. This is a semantic quibble. No witness can truthfully testify to more than what she has personally observed. Licensee's mother testified that she has not seen him drink since 2010 and that she has seen him

safely operate a vehicle. Notably, this was far more information about his behavior than what was reported in the Initial Reporting Form. The trial court observed the mother testify and found her credible. He found the substance of her testimony sufficient to rebut the Initial Reporting Form. It is for the trial court as fact finder to determine whether a licensee's witnesses are credible and his evidence sufficient. *Byler*, 883 A.2d at 729 (citing *Department of Transportation, Bureau of Traffic Safety v. O'Connell*, 521 Pa. 242, 555 A.2d 873 (1989) for the premise that "questions of credibility and conflicts in evidence are for trial courts to resolve and not the appellate courts.").

I would affirm the determination of the trial court. The trial court did not err or abuse its discretion in its evidentiary rulings or in how it evaluated PennDOT's evidence. More troublesome is the fact that PennDOT did not give Licensee an opportunity to submit his own medical evidence before making a determination of medical incompetency and issuing its recall notice.[10]

---

8. The Initial Reporting Form is less compelling than the report used in *Byler*, where the report came from the licensee's own physician. Here, the report came from a medical professional who had no history with Licensee. She examined him on one occasion.

9. It may be that Licensee's counsel simply decided that Licensee's testimony, which would be self-serving, lacked the value of his mother's testimony. Given the danger presented by drinking and driving, a mother is not likely to enable such risky behavior by assisting her child in restoring his driving

privileges and also commit perjury in the enabling process.

10. PennDOT argued that Licensee should have submitted to an examination as instructed by the recall notice before filing his appeal. This argument misstates the law. A licensee challenging a determination of incompetency need not submit to a medical examination unless the licensee is attempting to prove that he has regained competency. In the present case, Licensee is not claiming to have regained competency, only that PennDOT was incorrect in recalling his license for incompetency.