**Commonwealth v. Oswald**

C.P. of Delaware County, no. 94-8846.

*Marc A. Werlinsky, assistant counsel,* for PennDOT.
*Joseph M. Fioravanti,* for petitioner.

WRIGHT, *S.J.,* February 28, 1995—Petitioner Gilbert W. Oswald, through counsel, filed a petition for review to this court from a recall of his-motor vehicle operator's privileges by PennDOT. The basis of the administrative action was alleged medical conditions which would render Mr. Oswald incompetent to drive. Following a hearing,

at which both sides were very well represented by able counsel, this court denied the appeal and sustained the recall of the petitioner's license. The petitioner has appealed our decision to the Commonwealth Court which necessitates this opinion.

The sole issue framed by the petitioner in his statement of matters complained of on appeal, filed in response to an order made pursuant to Pa.R.A.P. 1925(b) was, "Whether the appellant Oswald was suffering from a medical disability, apparent from the medical record provided to PennDOT, to justify the department's suspension of his auto vehicular license."

At the hearing the department's counsel presented, without objection as to admissibility, a certified copy of the administrative record which included a PennDOT "Initial Reporting Form." That form has a section labeled "Diagnosis of Disorder of Disability" which lists a number of specific medical conditions, then the words, "Other medical conditions which would interfere with the patient's ability to drive—Explain below," and, finally, the word "comments." On that form a Thomas J. Whalen, D.O. had checked off, under the section labeled "Diagnosis of Disorder of Disability," only the word "comments" and then wrote, "see attached eval." Attached to the form were several pages of test results and a one page report addressed to Dr. Whalen from Bryn Mawr Rehabilitation Hospital Occupational Therapy Department.[1] Neither any of the specific diagnosis, nor the line which read, "Other medical conditions which would interfere with the patient's ability to drive—Explain below," were checked.

---

1. Petitioner's counsel stated that he was a treating physician who requested Mr. Oswald submit to a driver's test.

The physician then checked off "yes" following the question on the form, "Do these conditions affect the patient's ability, from a medical standpoint only, to safely operate a motor vehicle?" In what appears to be the same handwriting there is an asterisk, followed by the words, "This needs prompt attention—please."

The department justifies its decision under the provisions of 75 Pa.C.S. §1519(c), which provides,

"The department shall recall the operating privilege of any person whose incompetency has been established under the provisions of this chapter. The recall shall be for an indefinite period until satisfactory evidence is presented to the department in accordance with regulations to establish that such person is competent to drive a motor vehicle. Any person aggrieved by recall of the operating privilege may appeal in the manner provided in section 1550 (relating to judicial review.)"

The chapter of the Vehicle Code includes provisions for the appointment of a medical advisory board, to formulate regulations on physical and mental criteria for driving, 75 Pa.C.S. §1517, and to define those impairing disorders which health care professionals are required to report to PennDOT. 75 Pa.C.S. §1518.

The department has issued the following regulation:

"(a) General. A person afflicted by any of the following conditions may not drive if, in the opinion of the examining physician, the conditions are likely to interfere with the ability to control and safely operate a motor vehicle:

"(1) Loss or impairment of the use of a foot, leg, finger, thumb, hand or arm, as a functional defect or limitation.

"(2) Unstable or brittle diabetes or hypoglycemia, unless there has been a continuous period of at least six months freedom from a related syncopal attack.

"(3) Cerebral vascular insufficiency or cardiovascular disease, including hypertension, with accompanying signs and symptoms.

"(4) Periodic loss of consciousness, attention or awareness from whatever cause.

"(5) Rheumatic, arthritic, orthopedic, muscular or neuromuscular disease.

"(6) Mental deficiency or marked mental retardation in accordance with the International Classification of Diseases. For diagnostic categories, terminology and concepts to be used in classification, the physician should refer to the Diagnostic and Statistical Manual of the American Psychiatric Association and the Manual on Terminology and Classification in Mental Retardation of the American Association on Mental Deficiency.

"(7) Mental or emotional disorder, whether organic or functional.

"(8) Use of any drug or substance, including alcohol, known to impair skill or functions, regardless whether the drug or substance is medically prescribed.

*"(9) Another condition which, in the opinion of the examining licensed physician, could interfere with the ability to control and safely operate a motor vehicle.*

"(b) Special driving examination. A person afflicted by any of the conditions enumerated in subsection (a)(1), (5) or (9) *may* be required to undergo a special driving examination. The person may be restricted to driving a vehicle equipped in a manner prescribed by the examining

licensed physician or by the department." 67 Pa. Code §83.5 (1994). (emphasis added)

The petitioner's position, expressed first in a demurrer and, after the demurrer was denied, by way of argument, was that a report which did not specify a particular condition, and just said, "comments" and "see attached eval." was insufficient, as a matter of law, to sustain PennDOT's burden. Petitioner's arguments might be summarized as follows:

(1) The regulations and statute required a *specific* diagnosis which was not given.

(2) The report, by saying simply "see attached eval." was insufficient because the evaluation was inadmissible hearsay.

## I.

Clearly PennDOT has the discretion to request a further examination of a driver, after receiving evidence of an impairment. See 75 Pa.C.S. §1519(a). Just as clearly the agency has no discretion with respect recalling the license of anyone whose incompetency has been established. In the physician's report the driver's treating physician has stated that this licensee's conditions, "affect the patient's ability, from a medical standpoint only, to safely operate a motor vehicle." He checks off a box which says "comments," however, rather than one that says "Other medical conditions which would interfere with the patient's ability to drive—Explain below." and attaches an evaluation rather than explain, in his own words, what the evaluators have said.[2] We must ask if it makes any difference for

---

2. Part of the report stated, "Mr. Oswald was evaluated on the BMR grounds in very simple traffic situations. He failed this evalu-

the treating physician to say "see attached eval." rather than saying, "This patient has the following deficits: visual attention, impulsivity, spatial judgment, and basic safety judgement."

The Vehicle Code allows PennDOT to act in this area based upon the reports of physicians so long as the physician provides a medical basis for his opinion. See *Ploof v. Commonwealth,* 139 Pa. Commw. 235, 590 A.2d 1318 (1991). The legislature delegated, to a board of physicians, the listing of medical requirements for driving, and the impairments which should require that driving cease. 75 Pa.C.S. §§1517-1519. Those physicians, recognizing not all impairing medical conditions would be listed, included an "umbrella" criteria, "Another condition which, in the opinion of the examining licensed physician, could interfere with the ability to control and safely operate a motor vehicle." 67 Pa. Code §83.5(a)(9)

Physicians are (with a few exceptions) not lawyers nor law enforcement officers. They may not understand the need to check off the correct box when they are providing information which will clarify their check mark.[3]

---

ation. An on-road evaluation was not conducted due to safety concerns. He does not appear to have the abilities necessary for safe driving. Deficits include visual attention, impulsivity, spatial judgment, and basic safety judgement."

3. We take note of the fact that physicians keep detailed records and case histories on their patients. Thus, for example, although a hospital record might be labeled with both an initial and final diagnosis the physician (or anyone else) reads, at the very least, a discharge summary before deciding they know anything about that patient's hospital stay. It is the record, not a few words of summary, which seems to govern medical practice. By contrast in the law we tend to try to reduce a condition to a few words, such as "guilty." One still has to read the record to know how one got to that point,

If the physician had checked off "unstable diabetes" (one of the specific conditions on the list) and then included documentation of severe cerebral vascular or cardiovascular disease (the next specific condition on the list) and stated that it was his opinion this affected the patient's ability to drive, from a medical standpoint only, we think the report would still sustain a decision to recall the driver's license. The report, after all, can be prima facie evidence, but need not be the final word. A licensee can call, as a witness, a health care provider to dispute the report. We must conclude that, for reasons of public safety, it is the physician's opinion that there is a medical condition sufficient to impair the licensee, and not the specific diagnosis, which is paramount.

## II.

Petitioner maintains that the evaluation attached to the report cannot stand as evidence because it was not prepared by the physician and he did not specifically adopt it as something which he relied upon.

Essentially this is a hearsay objection. Petitioner's counsel, however, did not raise this objection at the time the department offered the record into evidence. As such the objection could be considered waived. We reach beyond that point, however, to state that we do not think that, under these circumstances, the record would be inadmissible as hearsay.

The statute specifically provides for the admission of physician reports in these cases. 75 Pa.C.S. §1518(e);

---

but a few words convey a lot more about the condition for the interested party. The mental "mind-set" of a doctor, we would think, is on the record, not the conclusion.

see *Ploof v. Commonwealth, supra.* If there were a requirement of live testimony from a physician the physician would be able to offer his opinions based upon medical records not in evidence, provided it was the type of record which the physician normally relied upon in the practice of his profession. See *e.g., Commonwealth v. Thomas,* 444 Pa. 436, 282 A.2d 693 (1971); *Cooper v. Burns,* 376 Pa. Super. 276, 545 A.2d 935 (1988). Even the report of a layperson can be relied upon, provided it is one usually relied upon in forming an opinion in the field. *Commonwealth v. Daniels,* 480 Pa. 340, 390 A.2d 172 (1978). Of course it is the physician's opinion testimony, and not the hearsay record, which goes into evidence. Where as here, the physician report is the admissible evidence, and clearly adopts another report, which the physician himself asked for, we would hold that it should be considered as part of the physician's report. It is clearly the type of information that the doctor relies upon, was requested by him, and is accepted by him.

For the reasons stated we sustained administrative order and denied the appeal.