Mary L. TURK, Appellant

v.

COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, Bureau of Driver Licensing.

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 19, 2009.

Decided Oct. 21, 2009.

Karen D. Pressler, Tarentum, for appellant.

Terrance M. Edwards, Asst. Counsel and Harold H. Cramer, Asst. Chief Counsel, Harrisburg, for appellee.

BEFORE: LEADBETTER, President Judge, SIMPSON, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Judge SIMPSON.

Mary L. Turk (Licensee) seeks review of an order of the Court of Common Pleas of Butler County (trial court) directing the Department of Transportation, Bureau of Driver Licensing (DOT) to restore her driver's license following a recall under 75 Pa.C.S. § 1519 (relating to determinations of incompetency) subject to the condition that Licensee pass an on-road driving test.

In particular, Licensee contends DOT and the trial court lacked either the statutory authority or a justifiable basis to require she pass a driving test as a condition of restoration after her medical and mental competency to drive were no longer at issue. Licensee also contends DOT and the trial court discriminated against her solely on account of her age.[1] In addition, Licensee claims DOT's recall notice violated her constitutional due process right to notice. For the reasons that follow, we affirm.

## I. History

### A. Letter from Relative

In June 2008, DOT received a letter from Licensee's niece stating that Licensee, 91 years old at the time, had vision problems that affected her ability to drive safely. *See* Reproduced Record (R.R.) at 56a–57a. Thereafter, DOT mailed Licensee a notice stating (with emphasis added):

Information submitted to [DOT] indicates that you may have a General Medical condition that could affect/limit your ability to drive. In order to determine if you meet [DOT's] medical standards for driving, it is necessary that you undergo a physical examination. *Based on the results of this examination, you may be required to have an additional medical evaluation and/or take a driver's test.*

*Id.* at 55a.

### B. First General Medical Form, July 2008

In addition to the recall notice, DOT enclosed a general medical form, known as

1. DOT's records indicate Licensee's date of birth as September 22, 1916. Reproduced Record (R.R.) at 59a.

a DL–123, to be completed by Licensee's health care provider. In July 2008, Licensee's internist, Dr. Thomas G. Shetter (Physician) completed the form and returned it to DOT. *See* R.R. at 49a. Physician indicated he treated Licensee since 1989 for coronary artery disease, hypothyroidism, asthma, and osteoarthritis. *Id.* When asked to describe Licensee's signs and symptoms, Physician stated "[Licensee] is doing well—but because of her age I would recommend that she be retested for a driver[']s license." *Id.*

However, Physician did not answer "yes" or "no" to whether Licensee had any condition that could interfere with her mental or physical ability to drive. Also, Physician did not answer "yes" or "no" to whether, from a medical standpoint, he considered Licensee physically and mentally competent to drive a motor vehicle.

*Id.* Nonetheless, Physician indicated Licensee "needs to retest." *Id.*

### C. Second General Medical Form, July, 2008

Shortly thereafter, Physician submitted a revised general medical form, dated the same day as the first form, with all boxes checked. *Id.* at 50a. As to whether Licensee had any disease or condition that could interfere with her mental or physical ability to operate a motor vehicle, Physician checked "yes." *Id.* As to whether, from a medical standpoint, he considered Licensee physically and mentally competent to operate a motor vehicle, Physician checked "no" and added "needs to retest." *Id.*

In August 2008, DOT notified Licensee that it received medical information indicating she had a general medical condition[2] that prevents her from safely operat-

**2.** DOT regulations at 67 Pa.Code § 83.5 (relating to disqualifying medical conditions other than epilepsy) relevantly provide (with emphasis added):

(b) *Disqualification on provider's recommendation.* A person who has any of the following conditions will not be qualified to drive if, in the opinion of the provider, the condition is likely to impair the ability to control and safely operate a motor vehicle:

(1) Loss of a joint or extremity as a functional defect or limitation.

(2) Impairment of the use of a joint or extremity as a functional defect or limitation.

. . . .

(3) Rheumatic, arthritic, orthopedic, muscular, vascular or neuromuscular disease.

. . . .

(4) Cerebral vascular insufficiency or cardiovascular disease which, within the preceding 6 months, has resulted in the lack of coordination, confusion, loss of awareness, dyspnea upon mild exertion or any other sign or symptom which impairs the ability to control and safely perform motor functions necessary to operate a motor vehicle.

(5) Mental disorder, whether organic or without known organic cause . . . especially as manifested by the symptoms set forth in (i)-(iii). . . .

(i) Inattentiveness to the task of driving because of, for example, preoccupation, hallucination or delusion.

(ii) Contemplation of suicide, as may be present in acute or chronic depression or in other disorders.

(iii) Excessive aggressiveness or disregard for the safety of self or others or both, presenting a clear and present danger, regardless of cause.

(6) Periodic episodes of loss of attention or awareness which are of unknown etiology or not otherwise categorized. . . .

(7) Use of any drug or substance, including alcohol, known to impair skill or functions, regardless whether the drug or substance is medically prescribed.

(8) *Other conditions which, in the opinion of a provider, is [sic] likely to impair the ability to control and safely operate a motor vehicle.*

(c) *Driving examination.* A person who has any of the conditions enumerated in subsection (b)(1), (2), (3) or (8) may be required to undergo a driving examination to determine driving competency, if [DOT] has

ing a motor vehicle. *Id.* at 52a. Pursuant to 75 Pa.C.S. § 1519,[3] DOT indefinitely recalled Licensee's driving privilege effective September 16, 2008. *Id.* The notice advised Licensee (with emphasis added): "This action will remain in effect until we receive medical information that your condition has improved *and you are able to safely operate a motor vehicle.*" *Id.*

Licensee appealed under 75 Pa.C.S. § 1550 ("Judicial review") and requested a supersedeas. The trial court held an evidentiary hearing and denied Licensee's supersedeas request.[4]

### D. Optometrist Report

In October 2008, Licensee's optometrist, Dr. William R. Wigton (Optometrist) sent DOT an eye examination report indicating Licensee had adequate vision to drive. R.R. at 108a. Following the receipt of Optometrist's report and a letter from Licensee requesting restoration of her license, DOT asked Licensee to submit another general medical form.

### E. Third General Medical Form, November, 2008

Shorty thereafter, Physician submitted a third general medical form, dated November 10, 2008. R.R. at 74a, 103a. Significantly, Physician again indicated Licensee had a condition or disease that could interfere with her mental or physical ability to operate a motor vehicle. *Id.* However, Physician considered Licensee physically and mentally competent to operate a motor vehicle. *Id.* Nevertheless, he again wrote (with emphasis added), that Licensee "is doing well but *needs to retest to determine her driving ability.*" *Id.*

On November 19, DOT sent Licensee a revised notice stating she only needed to pass a driving test to restore her license. *Id.* at 99a.

### F. Fourth General Medical Form, November, 2008

On November 20, ten days after his previous form, Physician submitted a

---

reason to believe that the person's ability to safely operate a motor vehicle is impaired .
. . .

3. 75 Pa.C.S. § 1519, titled "**Determination of incompetency,**" pertinently provides (with emphasis added):

   (a) **General rule.**—[DOT], *having cause to believe that a licensed driver or applicant may not be physically or mentally qualified to be licensed, may require the applicant or driver to undergo one or more of the examinations authorized under this subchapter in order to determine the competency of the person to drive.* [DOT] may require the person to be examined by a physician. . . . Vision qualifications may be determined by an optometrist or ophthalmologist. [DOT] shall appoint one or more qualified persons who shall consider all medical reports and testimony in order to determine the competency of the driver or the applicant to drive.
   . . . .

   (c) **Recall or suspension of operating privilege.**—*[DOT] shall recall the operating*

privilege of any person whose incompetency has been established under the provisions of this chapter. The recall shall be for an indefinite period until satisfactory evidence is presented to [DOT] in accordance with regulations to establish that such person is competent to drive a motor vehicle. [DOT] shall suspend the operating privilege of any person who refuses or fails to comply with the requirements of this section until that person does comply and that person's competency to drive is established. Any person aggrieved by recall or suspension of the operating privilege may appeal in the manner provided in [75 Pa.C.S. § 1550]. The judicial review shall be limited to whether the person is competent to drive in accordance with the provisions of the regulations promulgated under [75 Pa.C.S. § 1517] (relating to Medical Advisory Board).

4. Pursuant to 75 Pa.C.S. § 1550(b)(1)(ii), the filing of an appeal from a notice of medical recall does not act as a supersedeas unless so ordered by the common pleas court after a hearing.

fourth general medical form indicating Licensee could now drive safely; Physician no longer recommended that DOT retest Licensee. *Id.* at 98a. Neither this fourth form nor any of Physician's earlier three forms indicated when, if at all, Licensee was examined by Physician.

### G. *De Novo* Hearing and Decision

In December 2008, the trial court held a hearing on the merits of Licensee's appeal. Although Licensee subpoenaed Physician, she did not call him as a witness on the theory that Licensee's medical competency was no longer at issue.

Ultimately, the trial court entered an order directing DOT to restore Licensee's driving privilege "if and only if" she "passes a driving examination consisting of an on-road driving test." Trial Ct. Order, 12/12/2008. In an opinion in support of its order, the trial court noted that under 75 Pa.C.S. § 1519 (determination of incompetency) and 67 Pa.Code § 83.5(c), DOT has the authority to recall Licensee's license and require her to pass a driving test before restoring it. Trial Ct. Slip Op., 02/06/09, at 5. Licensee appeals.[5]

### II. Issues

Licensee states the following issues: whether the trial court exceeded its statutory authority in a medical recall appeal by imposing a driving test requirement as a restoration condition where Licensee's physical and mental competency to drive were no longer at issue; assuming the trial court had such authority, whether it had a justifiable basis for doing so; whether DOT may impose a driving test requirement after Licensee's medical and mental competency to drive were established;

whether DOT and the trial court violated public policy against age discrimination by imposing a driving test requirement based only on Physician's recommendation she be retested because of her age; and whether DOT's recall notification violated Licensee's constitutional due process right to notice by only informing Licensee that her license was recalled because of a "general medical condition."

### III. Discussion

### A. Driving Test Requirement

#### 1. Contentions

Initially, Licensee contends the trial court and DOT lacked the statutory authority to impose the driving test requirement as a condition of the restoration of Licensee's driving privilege. Basically, Licensee argues DOT is authorized by 75 Pa.C.S. § 1519(a) (determination of incompetency) to require a driving test in order to determine a driver's competency for purposes of a recall, but not as a condition of restoration where the driver's medical and mental competency to drive are no longer at issue. Further, even assuming the trial court has the authority to impose the driving test requirement, Licensee maintains the court lacked a basis to do so because Physician identified no medical or mental condition justifying the test, Licensee's competency was no longer an issue, and Physician ultimately omitted any recommendation that Licensee undergo a driving test.

First, Licensee contends the trial court erred as a matter of law in exceeding its statutory authority in a license recall appeal by imposing the driving test requirement as a condition of restoration. Licen-

5. Our review is limited to determining whether the trial court's necessary findings are supported by substantial evidence and whether the court committed a reversible error of law or abused its discretion. *Neimeister v. Dep't of Transp., Bureau of Driver Licensing,* 916 A.2d 712 (Pa.Cmwlth.2006).

see's argument is as follows. Pursuant to 75 Pa.C.S. § 1519(c) (determination of incompetency), any person aggrieved by a license recall may appeal in the manner provided by 75 Pa.C.S. § 1550 (judicial review).[6] Judicial review under 75 Pa.C.S. § 1550(c) in this case is limited to determining solely whether Licensee's operating privilege should be recalled. Judicial review under 75 Pa.C.S. § 1519(c) is limited to determining whether the person is competent to drive in accord with DOT regulations. Thus, Licensee maintains the trial court lacked the statutory authority under 75 Pa.C.S. §§ 1550(c) (judicial review) and 1519(c) (determination of incompetency) to impose a driving test requirement as a condition of restoration.

Licensee further contends DOT lacks either the statutory or regulatory authority to impose a driving test requirement as a condition of the return of her driver's license. As noted, Licensee asserts that under 75 Pa.C.S. § 1519(a) (determination of incompetency), DOT, having cause to believe a licensed driver or applicant may not be physically or mentally qualified to drive, may require the driver or applicant to undergo one or more examinations, including a driving test, to determine the competency of the person to drive. If DOT determines the driver is incompetent, it shall recall the driver's license for an indefinite period "until satisfactory evidence is presented [to DOT] to establish that such person is competent to drive a motor vehicle." 75 Pa.C.S. § 1519(c). If the driver fails to comply with Section 1519(c)'s requirements, DOT shall suspend the driver's license until the person does comply and establishes her competency. *Id.*

Here, Licensee argues DOT acted too hastily in recalling her license. Rather than following the procedure in 75 Pa.C.S. § 1519(a) (determinations of incompetency), which includes various testing to determine competency prior to issuing the recall, DOT recalled Licensee's driving privilege, without requiring a driving test, based on an unsubstantiated report from a family member about purported vision deficiencies and Physician's "check the box" report that did not indicate what condition or disease rendered Licensee incompetent to drive. Licensee urges DOT later tried to establish incompetency by requiring a driving test as a condition of restoration.

In addition, Licensee argues the two cases relied on by DOT, *Neimeister v. Department of Transportation, Bureau of Driver Licensing*, 916 A.2d 712 (Pa. Cmwlth.2006) and *Montchal v. Department of Transportation, Bureau of Driver Licensing*, 794 A.2d 973 (Pa.Cmwlth.2002), are factually distinguishable and thus inapplicable here.[7] Unlike the licensees in

---

**6.** 75 Pa.C.S. § 1550(a) and 42 Pa.C.S. § 933(a)(1)(ii) vest the trial court with jurisdiction of appeals from medical recalls of driver's licenses. 75 Pa.C.S. § 1550(c) provides (with emphasis added):

> **Proceedings of court.**—*The court shall* set the matter for hearing upon 60 days' written notice to [DOT] and *determine whether the petitioner's driver's license should be* denied or cancelled, the petitioner's operating privilege should be suspended, revoked or *recalled* or the petitioner's endorsement should be removed[.]

**7.** In *Neimeister,* an ambulance driver witnessed an 86–year–old licensee cross back and forth over the double yellow line and nearly sideswipe two cars in the other lane. The ambulance driver provided a description of the car and the plate number to the police, who ultimately recommended to DOT that the licensee be reexamined. The licensee passed the vision test, but failed the traffic signs and laws sections of the examination. The licensee also refused to comply with the driving test requirement. As a result, DOT indefinitely suspended her license under 75 Pa.C.S. § 1519(c) (determination of incompetency).

those cases, Licensee points out she was not involved in a traffic accident or guilty of erratic driving. Rather, DOT's recall was based on Physician's "check the box" report that did not identify any specific condition or disease rendering her incompetent to drive. Also, in *Neimeister* and *Montchal*, DOT imposed the driving test requirement *prior* to the suspension or recall.

Licensee also argues DOT violated several of its regulations governing license recalls. *See* 67 Pa.Code §§ 82.1–83.6. Licensee asserts nothing of record indicates DOT inquired into the validity of her niece's letter as required by 67 Pa.Code § 82.8(b). Additionally, a physician must provide *"clear information* indicating that the person does not meet the medical regulations for safe driving" before DOT's Medical Unit may recall a driver's license. 67 Pa.Code § 82.3(a) (emphasis added). Here, Physician's reports did not identify any specific disorder or disability affecting Licensee's ability to drive safely. Rather, Physician's reports indicated Licensee "is doing well," but needs to be retested because of her age. Absent any specific condition being identified by Physician as likely to impair Licensee's ability to drive safely, the Medical Unit could not review and evaluate her competency to drive as directed by 67 Pa.Code §§ 82.2(c) and (d).

Conversely, DOT relies on 75 Pa.C.S. § 1519 (determination of incompetency),

*Neimeister* and *Montchal,* and contends it possesses the statutory authority to require Licensee to pass a driving test before her license is restored. DOT also contends the trial court possesses equivalent statutory authority.

■■■■ Further, DOT maintains it satisfied its initial burden of establishing Licensee's incompetency to drive on the date it recalled her license. "In order to sustain the recall of a driver's license based on incompetency, [DOT] must prove by a preponderance of the evidence that the licensee was incompetent to drive as of the date of recall." *Byler v. Dep't of Transp., Bureau of Driver Licensing,* 883 A.2d 724, 728 (Pa.Cmwlth.2005). Absent any medical evidence to the contrary, the medical report alone is sufficient to establish a *prima facie* case and support a finding that the licensee suffers from a medical condition that interferes with her ability to drive. *Id.* The burden then shifts to the licensee to prove she was competent to drive on the date of recall or has become competent to drive thereafter. *Id.* To meet this burden, DOT argues the licensee must prove she can drive safely. *See Alexander v. Dep't of Transp., Bureau of Driver Licensing,* 583 Pa. 592, 880 A.2d 552 (2005) (driving in Pennsylvania is a privilege, not a property right; to obtain the benefits of this privilege, a driver must abide the laws relating to it); *Pennington v. Dep't of Transp., Bureau of Traffic*

---

On appeal, the trial court determined 75 Pa.C.S. § 1519(a) did not authorize DOT to require the licensee to take a driving test after she submitted the successful results of her physical examination. In rejecting this interpretation as too narrow, we concluded that although the licensee's doctor found her competent to drive from a medical standpoint, Section 1519(a) still provided DOT with the authority to require her to undergo a driving test.

In *Montchal,* an 80–year–old licensee crashed into a tree. The police also received

a complaint from a neighbor about her driving. The police recommended she be reexamined. The licensee failed the driving, traffic signs and laws sections of the examination. DOT then recalled her license.

The trial court sustained the licensee's appeal on the basis DOT could not recall the license solely on the police recommendation without a medical report. In reversing, we determined DOT could recall the license based on the licensee's failure to pass the driving test and that medical reports were unnecessary.

*Safety,* 6 Pa.Cmwlth. 355, 295 A.2d 630 (1972) (87–year–old driver with unblemished record must still pass driving test to prove her driving competence).

Moreover, DOT asserts the trial court possesses the equivalent authority under 75 Pa.C.S. § 1550 (judicial review) and 1514(c) (reexaminations requested by court in license renewal),[8] in a statutory appeal of a recall, to require a licensee to prove she can drive safely by passing a driving test in order to reestablish that she is qualified to be licensed. DOT urges that Licensee's contrary interpretation of 75 Pa.C.S. § 1550 is unreasonable given the trial court's *de novo* review in recall appeals.

### 2. Analysis

### a. DOT

■■■ To begin, we agree with DOT that once it has cause to believe a licensed driver may not be physically or mentally qualified to drive, 75 Pa.C.S. § 1519(a) (determination of incompetency) provides the authority to require the driver to undergo one or more of the examinations for new driver's license applicants[9] or for license renewal applicants.[10] *Neimeister; Montchal.* An actual driving test is among the examinations which may be required. *Id.*

Here, Physician's general medical forms uniformly indicate Licensee has medical conditions requiring treatment. In particular, Physician treats Licensee for coronary artery disease, hypothyroidism, asthma and osteoarthritis.

More importantly, on his second general medical form, which was issued before the recall, Physician indicated Licensee had a condition or disease that could interfere with her ability to drive. R.R. at 50a. Although Physician did not identify a particular medical condition or disease likely to impair Licensee's ability to drive safely,

---

8. 75 Pa.C.S. § 1514(c), provides:

   (c) **Reexamination requested by court.**— [DOT] *shall reexamine any person when requested to do so by a court.* Upon the conclusion of such examination, [DOT] may take any of the actions described in subsection (b) and shall report its findings and action to the court if such report is requested.

9. 75 Pa.C.S. § 1508(a) provides (with emphasis added):

   (a) **General rule.**—Every applicant for a driver's license shall be examined for the type or class of vehicles the applicant desires to drive. *The examination shall include* a physical examination, a screening test of the applicant's eyesight and a test of the applicant's ability to read and understand official traffic-control devices, knowledge of safe driving practices and the traffic laws of this Commonwealth, and shall include *an actual demonstration of ability to exercise ordinary and reasonable control in the operation of a motor vehicle of the type or class of vehicles for which the applicant desires a license to drive.*

10. 75 Pa.C.S. § 1514(b) provides (with emphasis added):

    (b) **Examination of applicants for renewal.**—[DOT] may require persons applying for renewal of a driver's license to take and successfully pass a physical examination or a vision examination by an optometrist or ophthalmologist, or both examinations, *if [DOT] has reason to believe, either based on knowledge of the person or on statistical inference, that the person may be a traffic safety hazard.*[10] *[DOT] may require the applicant to take and successfully pass such additional tests as [DOT] may find reasonably necessary to determine the applicant's qualification according to the type or general class of license applied for and such examination may include any or all of the other tests required or authorized upon original application by [75 Pa.C.S. § 1508] (relating to examination of applicant for driver's license). Upon refusal or neglect of the person to submit to the examination, the driver's license shall not be renewed until such time as the examination is successfully completed.*

he indicated that from a medical standpoint he did not consider Licensee physically and mentally competent to drive. R.R. at 50a. Physician also recommended repeatedly that Licensee be retested because of her age. R.R. at 49a, 50a.

The second general medical form is sufficient to meet DOT's initial burden for a recall. As to the absence of a specific disqualifying condition, it is Physician's opinion that Licensee was medically incompetent to drive, not the specific condition itself that is of paramount importance for public safety. *See e.g., Commonwealth v. Oswald,* 24 Pa. D. & C.4th 223 (C.P.Delaware), *aff'd by mem. op.,* 663 A.2d 901 (Pa.Cmwlth.1995) (for safety reasons, it is the physician's opinion there is a medical condition sufficient to impair the licensee, not the specific diagnosis, which is paramount). Physician's second general medical form triggered DOT's authority under Section 1519(a) (determination of incompetency) to require Licensee to undergo examinations to determine her competency. *Neimeister; Montchal.*

■ At this point, the burden shifted to Licensee to re-establish her competency to drive. Medical evidence, by itself, may not be sufficient to establish competency to drive; rather, the driver may be required to take a driving test. *Neimeister.*

Licensee offered to prove her medical competency to drive as of Physician's third general medical form (November, 2008). *See* R.R. at 103a. However, even on this

form, Physician twice indicated Licensee should be retested to determine her driving ability. *Id.* In response to this report, DOT notified Licensee that her examination to determine competency to drive, would consist of an "on-road driving test only." R.R. at 99a.

■ Although Physician submitted an additional, unsolicited fourth form ten days later (November, 2008), in which he no longer recommended a retest, DOT may require Licensee to pass a driving test regardless of Physician's last recommendation. *Neimeister.* Further, the timing and issuance of multiple forms, the conflicting statements contained on the forms and the lack of clarity regarding the extent to which Physician's opinions were based on current examinations are circumstances which a fact-finder may consider in determining whether Licensee carried her burden to prove competency to drive.[11]

■ For the above reasons, we hold that 75 Pa.C.S. §§ 1519(a) and (c) (determination of incompetency) provide DOT with the statutory authority to require Licensee to pass a driving test in order for DOT to determine her competency to drive a motor vehicle as a condition of restoration. *Neimeister; Montchal.*

■ Also, we reject Licensee's arguments that DOT violated its medical recall regulations. After receiving the relative's letter, DOT requested medical information from Licensee by forwarding the general

---

11. We also reject Licensee's apparent argument that DOT lost jurisdiction to require a driving test when Licensee appealed the recall notice to the trial court. DOT's recall notice states (with emphasis added) that the recall "will remain in effect *until we receive medical information that your condition has improved and you are able to safely operate a motor vehicle.*" R.R. at 52a. The recall notice advised Licensee that DOT may restore Licensee's driving privilege if she proves she is

medically and physically competent to drive. Clearly, DOT retained jurisdiction over the restoration of Licensee's operating privilege. *See* 75 Pa.C.S. § 1519(c) (a recall will continue indefinitely until the driver presents satisfactory evidence to DOT that she is competent to operate a motor vehicle). We also note Licensee submitted additional medical forms to DOT after she filed her recall appeal, thereby acknowledging DOT's continued jurisdiction over the restoration of her license.

medical form to her. DOT received multiple copies of the form completed by Physician. Given general restrictions on disclosures of medical information, this process is a reasonable investigation. In addition, the process is consistent with DOT's regulations. *See* 67 Pa.Code § 82.6 (providing for additional medical examinations or driving test if deemed necessary). Moreover, mindful of restrictions on disclosures and on the availability of treating physicians, it is understandable that DOT could not easily compel clearer statements from Physician. Under these restraints, we discern no departure from DOT's regulations which would vitiate the recall.

### b. Trial Court

■ Most importantly, we hold the trial court can impose a driving test requirement as a condition of the restoration of Licensee's license.

Pursuant to 75 Pa.C.S. § 1550 (judicial review), the trial court is authorized to conduct a *de novo* review in a medical recall proceeding. "The court shall ... determine whether ... the [licensee's] operating privilege should be suspended, revoked or recalled...." 75 Pa.C.S. § 1550(c). This statutory provision does not specify the options available to the trial court during its *de novo* review.

It would be unreasonable, however, to conclude there is a silent limitation on a trial court's authority to assess competency by requiring retesting, despite repeated pleas by a treating physician for retesting. We presume the General Assembly did not intend such an unreasonable result. 1 Pa. C.S. § 1922(1).

■ This is especially true because the trial court may direct DOT to perform driver reexaminations under 75 Pa.C.S. § 1514(c) (reexamination requested by court in license renewal).[12] There is no obvious reason to limit a trial court's options in *de novo* review of determinations of incompetency, while granting broader authority in license renewals. Consequently, we conclude neither 75 Pa.C.S. § 1519(c) (determination of incompetency) nor 75 Pa.C.S. § 1550(c) (judicial review) limits the trial court's authority to request reexamination as part of its *de novo* review of competency.

■ For the same reasons, we reject as unreasonable Licensee's contention that a driving test may only be imposed by DOT prior to recall, but not by DOT or a trial court as part of a review of competency after an appeal. As a result, we interpret 75 Pa.C.S. §§ 1519(a) and (c) (determination of incompetency) and 75 Pa.C.S. § 1550(c) (judicial review) as authorizing DOT in a recall proceeding or a trial court

---

**12.** In her reply brief, Licensee argues 75 Pa. C.S. § 1514(c) applies only to license renewals, not license recalls. She further argues that even if Section 1514(c) authorized the trial court to order a reexamination, this does not include a driving test, which DOT must determine is necessary. Additionally, Licensee contends the 1996 amendments to 75 Pa. C.S. § 1519 (determination of incompetency), which authorized DOT to require a driver to undergo a driving test to determine competency, rendered Section 1514(c) obsolete. We disagree.

Pursuant to Section 1514(c) a trial court may order a driving test to determine compe-

tency. *Knoche v. Dep't of Transp.*, 70 Pa. Cmwlth. 430, 453 A.2d 690 (1982). Although the 1996 amendments to Section 1519(a) now expressly authorize DOT to require a driving test to determine competency, this did not diminish the trial court's authority to order a reexamination under Section 1514(c). Every statute must be construed, if possible, to give effect to all of its provisions. 1 Pa.C.S. § 1921; *Montchal*. Sections 1514 and 1519 authorize DOT to impose a driving test requirement where it has reason or cause to believe a driver may be a safety hazard. Section 1514(c) provides similar authority to the trial court.

in a recall appeal to require a driver to take and pass and driving examination to prove competency.

### B. Age Discrimination

■ Licensee asserts that by imposing a driving test requirement solely on Physician's recommendation that she be retested because of her age, DOT and the trial court violated public policy against age discrimination. *See* Section 2(a) of the Pennsylvania Human Relations Act (PHRA)[13] (age discrimination declared illegal).

Licensee urges the sole reason Physician recommended she undergo a driving test was her age, which is not a medical or mental condition. Age is nowhere mentioned in DOT's medical recall regulations.[14] Absent identification of any medical or mental condition, Licensee contends age alone does not constitute a valid basis to require her to pass a driving test. By requiring her to take a driving test merely because of her age, Licensee maintains DOT and the trial court have created a presumption that age equals incompetency. Such a presumption is the type of discrimination the PHRA is designed to prevent.

Licensee's age discrimination argument fails for factual and legal reasons. Factually, DOT recalled Licensee's license based on Physician's first and second general medical forms. On the second form Physician indicated that from a medical standpoint Licensee was not competent to drive and should be retested. Having treated Licensee for nearly 20 years, Physician had the background to render medical opinions about Licensee's competency to drive. The second general medical form is sufficient to satisfy any initial burden to show DOT's action was not based on an improper criterion. Further, the trial court, as fact-finder in its *de novo* review of competency, did not make any findings to support a conclusion that DOT's reliance on Physician's second general medical form was a pretext or that DOT intended to discriminate against Licensee based on her age.

Also, from a legal point of view we discern no merit in Licensee's claim of age discrimination. In this regard, we find instructive this Court's decision in *Pennington*. In that case, we rejected a claim of age discrimination brought by an 87–year old licensee who failed to show the driving test administered to her differed from that given to all applicants for a driver's license. Here, there is no attempt to prove that the driving test required of Licensee is different from that required of other drivers.

### C. Due Process

Finally, Licensee contends DOT did not give her notice of any medical or mental condition justifying the recall and subsequent refusal to return her driver's license. Therefore, Licensee asserts DOT's recall notice violated her due process rights under Article 1, Section 1 of the Pennsylvania Constitution and the Fourteenth Amendment to the United States Constitution.

---

13. Act of October 27, 1955, P.L. 744, *as amended,* 43 P.S. § 952(a).

14. Licensee acknowledges DOT operates a program known as the Mature Driver Reexamination Program. Each month DOT selects 1900 drivers *over the age of 45* for retesting six months prior to the date of their driver's license renewal. Each selected driver must undergo a vision and a physical examination. If warranted by the results of these examinations, the driver may also be required to complete a driving test. *See* Licensee's Br. at 42–43.

The due process requirements of the Pennsylvania Constitution are indistinguishable from the Fourteenth Amendment and, therefore, the same analysis applies to both provisions. *Pa. Game Comm'n v. Marich,* 542 Pa. 226, 666 A.2d 253 (1995). As License asserts, a driver's license may not be suspended, revoked or recalled without due process. *Harrington v. Dep't of Transp., Bureau of Driver Licensing,* 563 Pa. 565, 763 A.2d 386 (2000). "Where a constitutionally protected property or liberty interest is at stake, due process requires sufficient notice of the conduct that forms the basis for a deprivation so that the respondent may adequately prepare a defense." *Id.* at 575, 763 A.2d at 392 (footnote omitted).

### a. Contentions

Licensee contends DOT's recall notice merely stated, "We have received medical information indicating that you have a General Medical condition which prevents you from safely operating a motor vehicle" and that the recall decision was made "by comparing your medical condition with the standards recommended by our Medical Advisory Board and adopted by [DOT]." R.R. at 52a. This notice, Licensee maintains, did not identify what "General Medical condition" rendered her unfit to drive, did not attach any document that would put her on notice of the specific problem, and did not identify which Medical Advisory Board standard she supposedly did not meet.

In preparing for her supersedeas hearing, Licensee had only Physician's first and second general medical reports, which did not indicate what condition, other than age itself, rendered her incompetent to drive. *See* R.R. at 28a–29a. Licensee further asserts that prior to the supersedeas hearing, DOT never informed her about her niece's letter alleging vision deficiencies. If DOT had informed her of this letter, she could have passed a vision test prior to the hearing. Thus, Licensee did not know what type of medical evidence she needed to present to obtain a supersedeas.

In short, Licensee contends DOT's recall notice did not meet constitutional due process standards because it did not identify any medical or mental condition impairing her ability to drive. "A notice of suspension may violate an individual's due process rights if it contains information that is misleading and impairs preparation of the individual's defense." *Dunn v. Dep't of Transp., Bureau of Driver Licensing,* 819 A.2d 189, 192–93 (Pa. Cmwlth.2003). Further, the "test for the adequacy of notice in accordance with procedural due process standards is not whether the licensee can correct the information contained in defective notices through diligent investigation, but rather whether the notices contain sufficient information and explanation to allow the licensee to defend against the charges contained therein." *Id.* at 193. Asserting DOT's recall notice was constitutionally defective, Licensee urges that DOT's imposition of a driving test requirement flowing from that notice should be deemed invalid.

DOT counters, citing *Harrington,* that its recall notice advised Licensee of the length of the recall (indefinitely), the reason for the recall (the existence of a general medical condition which prevents her from safely operating a motor vehicle), and the statutory authority for the recall (75 Pa.C.S. § 1519(c)). DOT asserts nothing more is required. *Harrington.* Further, DOT notes Licensee acknowledges she received Physician's first two general medical forms prior to the supersedeas hearing, and nothing precluded Licensee from speaking with Physician.

DOT further asserts that there is no question Licensee was accorded procedural due process because the trial court, an independent fact-finder, conducted a *de novo* hearing. *See Dep't of Transp., Bureau of Traffic Safety v. Quinlan*, 47 Pa. Cmwlth. 214, 408 A.2d 173 (1979) (*de novo* hearing before trial court cured any procedural due process defect resulting from the lack of an administrative hearing).

#### b. Analysis

■■■■ We conclude DOT's August 2008 recall notice met constitutional due process standards. "It is commonly understood that, unlike some legal rules, due process is not an inflexible, technical conception with a fixed meaning unrelated to the particular circumstances of the case." *Dunn*, 819 A.2d at 192. "[D]ue process is afforded when [an individual] is informed with reasonable certainty of the charges against the [individual] so that he or she may prepare an adequate defense." *Id.*

Here, DOT's recall notice advised Licensee that it received medical information that she had a "General Medical condition" which prevented her from safely operating a motor vehicle. R.R. at 52a. The notice further advised Licensee that the recall was for an indefinite period and would remain in effect until DOT received medical information that her condition improved and she could safely operate a motor vehicle. *Id.* After receiving the recall notice, Licensee visited Physician's office, and he gave her copies of his first two general medical forms. *Id.* at 28a–29a.

The recall notice was based on forms from Licensee's treating physician. The notice gave Licensee sufficient information to see Physician and obtain from him copies of the forms he submitted to DOT. Having received the forms from Physician, Licensee had as much actionable information as DOT possessed. Because the content of the notice actually put Licensee on inquiry, no prejudice is evident. *Harrington.*

Moreover, by the date of the supersedeas hearing in September, 2008, Licensee was prepared to prove competency to drive. She relied on previously submitted reports, and she presented witness testimony. Licensee was again prepared to address the merits at the *de novo* hearing in December, 2008. She relied on reports and again presented witness testimony. She declined the opportunity to present testimony from Physician. In light of the two hearings before the trial court, we do not believe the procedures in this case created a significant risk that Licensee was erroneously deprived of her privilege of license restoration. *See Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (among factors to be reviewed in procedural due process evaluation is the risk of erroneous deprivation of private interest through the procedures used). We believe the hearings cured any claimed problems with the notice.

■■■ Finally, the appropriate remedy for insufficient notice would be to remand for an additional hearing after new notice. However, Licensee does not seek a third hearing; rather, she seeks an order declaring her competent to drive without taking a retest. Licensee's due process argument fails to align the appropriate remedy for a claimed procedural error with the relief she requests.

For all the above reasons, the trial court's order is affirmed.

#### ORDER

AND NOW, this 21st day of October, 2009, for the reasons stated in the foregoing opinion, the order of the Court of Common Pleas of Butler County is **AFFIRMED.**

DISSENTING OPINION BY Senior Judge FRIEDMAN.

I respectfully dissent. The majority holds that, pursuant to sections 1519(a) and 1519(c) of the Vehicle Code,[1] the Commonwealth of Pennsylvania, Department of Transportation (DOT) was authorized to require Mary L. Turk (Licensee) to pass a road test as a condition for the restoration of her driver's license, which DOT recalled based on medical incompetency. (Majority op. at 815.) Because Licensee's medical competency was not at issue before the Court of Common Pleas of Butler County (trial court), I cannot agree.

On August 26, 2008, DOT recalled Licensee's driver's license based on a medical report stating that Licensee had a condition that could interfere with her mental or physical ability to operate a motor vehicle and that the physician did not consider Licensee physically and/or mentally competent to operate a motor vehicle.[2] On September 19, 2008, DOT sent Licensee a restoration requirements letter, indicating that the recall was the "result of health related problems," i.e., that DOT would restore Licensee's operating privilege when her health problems had resolved. (R.R. at 110a.)

Licensee appealed the recall, and a *de novo* hearing was held before the trial court. Section 1519(c) of the Vehicle Code states that, when an aggrieved person appeals a recall, "judicial review shall be limited to whether the person is competent to drive . . . ." 75 Pa.C.S. § 1519(c). At the hearing, counsel for DOT informed the trial court that a subsequent medical report indicated that Licensee had no medical condition that would interfere with her

driving and that Licensee was physically and mentally able to operate a motor vehicle. However, counsel indicated that DOT now was requiring that Licensee pass a road test as a condition of license restoration. Counsel for DOT then addressed the trial court as follows:

I would state that **there isn't an issue that stands before you at this point in time,** basically. I don't think the [trial court] has jurisdiction on the matter of whether or not the Commonwealth can require a licensee to take a test [prior to restoration]. **The issue of her competency as far as her physical condition is not an issue anymore.**

(R.R. at 79a–80a) (emphasis added). Nevertheless, the trial court issued an order directing restoration of Licensee's operating privilege only if she passed a road test.

As indicated, the majority holds that sections 1519(a) and 1519(c) of the Vehicle Code authorize DOT to require a road test as a condition for restoration of Licensee's operating privilege.

Section 1519(a) of the Vehicle Code provides, in pertinent part, as follows:

(a) General rule.—[DOT], **having cause to believe that a licensed driver or applicant may not be physically or mentally qualified to be licensed,** may require the applicant or driver to undergo one or more of the examinations authorized under this subchapter in order to determine the competency of the person to drive.

75 Pa.C.S. § 1519(a) (emphasis added). This provision only authorizes DOT to require a licensee to undergo a test to determine competency to drive if there is reason to do so. However, based on a

---

1. 75 Pa.C.S. § 1519(a) and § 1519(c).

2. I note that DOT received an earlier medical form that did not contain such statements, but DOT sought a revised form addressing these issues. The physician's original form stated only that Licensee should be retested because of her age.

physician's report stating that Licensee is competent to drive, DOT informed the trial court that Licensee's competency to drive is no longer an issue and, thus, there was no issue properly before the trial court. Because section 1519(a) pertains only to competency to drive where DOT has reason to question competency, a non-issue here, it does not provide DOT with authority to impose a road test on Licensee prior to the restoration of her operating privilege.

Section 1519(c) of the Vehicle Code provides:

> [DOT] **shall recall** the operating privilege of any person whose incompetency has been established under the provisions of this chapter. The recall shall be for an indefinite period **until satisfactory evidence is presented to [DOT]** in accordance with regulations **to establish that such person is competent to drive** a motor vehicle.

75 Pa.C.S. § 1519(c) (emphasis added). This provision requires a recall when incompetency has been established, to last only until DOT has evidence that competency has been restored. Here, DOT conceded before the trial court that competency was no longer at issue. Section 1519(c) contains nothing that authorizes DOT to impose a road test as a condition for the restoration of a driver's license when competency is not at issue.[3]

Finally, the majority holds that the trial court had authority pursuant to section 1550(c) of the Vehicle Code to impose a road test as a condition for restoration of Licensee's driver's license. Section 1550(c) of the Vehicle Code provides that, on appeal from a license recall, the court shall determine whether the license should be recalled. However, section 1519(c) of the Vehicle Code specifically states that, on appeal from a license recall, judicial review is limited to whether the person is competent to drive. 75 Pa.C.S. § 1519(c). DOT removed Licensee's competency as an issue before the trial court. Thus, I cannot accept the majority's conclusion.

Accordingly, I would reverse.

---

**3.** In fact, DOT's regulation at 67 Pa.Code § 82.4(a) states, "When a physician provides clear information indicating that the person does meet the medical regulations for safe driving, the Medical Unit restores the driving privilege." Although DOT conceded that it had such information, DOT did not restore Licensee's operating privilege.