Dorothy Marie Sexauer        :
                          :
          v.                :
                          :
Commonwealth of Pennsylvania,  :
Department of Transportation,   :
Bureau of Driver Licensing,     :  No. 1497 C.D. 2019
              Appellant   :  Submitted: October 16, 2020

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE ELLEN CEISLER, Judge

OPINION BY
JUDGE COVEY                        FILED: December 23, 2020

        The Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing (DOT) appeals from the Allegheny County Common Pleas Court's (trial court) September 26, 2019 order sustaining Dorothy Marie Sexauer's (Sexauer) appeal and affording her a third opportunity to pass her driver skills test. DOT presents one issue for this Court's review: whether this Court should vacate the trial court's order and remand for additional proceedings because DOT's counsel misstated a material fact regarding DOT's awareness of Sexauer's medical forms. After review, we vacate and remand.

        On December 10, 2018, after conducting a medical examination of 95-year-old Sexauer on December 5, 2018, internal medical specialist G. Richard Zimmerman, II, M.D. (Dr. Zimmerman),[1] completed a DOT DL-13 Initial Reporting Form notifying DOT that Sexauer had cardiovascular disease (coronary artery disease (CAD) and coronary artery bypass grafting (CABG)). *See* Reproduced Record (R.R.)

---

[1] Sexauer had been Dr. Zimmerman's patient since 2014.

at 26a. Further, under "[o]ther [m]edical [c]onditions that would interfere with [Sexauer's] ability to drive . . . ," Dr. Zimmerman specified: a recent left orbital fracture, degenerative disc disease, left knee osteoarthritis, poor balance, and unsteady gait. *Id.* Dr. Zimmerman indicated in the Initial Reporting Form that Sexauer did not need to stop driving immediately, but recommended that her medical infirmities warranted DOT's further investigation of her driving competency, including re-taking her driver skills test. *See id.*

DOT provided Sexauer a Physical Examination Certificate, Part I of which required vision screening, and Part II of which required a medical examination. *See* R.R. at 25a. On December 17, 2018, Sexauer passed her vision screening test. *See id.* On December 26, 2018, Dr. Zimmerman conducted her medical examination. *See id.* Therein, Dr. Zimmerman checked "No" in response to the following inquiries:

> DOES THIS PERSON HAVE ANY OF THE FOLLOWING CONDITIONS:
>
> . . . .
>
> 2. Any Cardiac or Circulatory disorder including Hypertension such as to prevent reasonable control of a motor vehicle?
>
> . . . .
>
> 9. Immobility . . . of an Appendage? . . . .
>
> 10. Does this person have any other condition that would prevent control of a motor vehicle? . . . .

R.R. at 25a.

> On December 28, 2018, Dr. Zimmerman issued a letter stating:
>
> [Sexauer's] past medical history includes coronary artery disease, hypertension, lumbar degenerative disc disease, and right total knee arthropathy and left knee osteoarthritis.

2

She recently had a mechanical fall in late November 2018[,] sustaining [a] left orbital fracture and left hip contusion.

Because of her poor balance and unsteady gait, I would recommend occupational therapy evaluation for driving privilege[] and re[-]taking her driver[][skills] test at this time.

R.R. at 24a.

On December 29, 2018, DOT issued a notice recalling Sexauer's driving privilege due to medical incompetence pursuant to Section 1519(c) of the Vehicle Code,[2] effective January 5, 2019 (Notice). The Notice stated, in pertinent part:

Your driving privilege is hereby recalled until you have demonstrated your condition meets [DOT's] minimum medical standards.

This decision has been made by comparing your medical information with the standards recommended by our Medical Advisory Board and adopted by [DOT]. This action will remain in effect until [DOT] receives medical information indicating that your condition has improved, and you are able to safely operate a motor vehicle. [DOT] may also require you to take and pass a driving examination before it will restore your driving privilege.

If you feel our records are incorrect, you may have your health care provider submit updated information detailing your medical condition.

R.R. at 5a. DOT enclosed with the Notice a Cardiovascular Form DL-120, General Medical Form DL-123, General Neurologic Form DL-124, and Orthopedic Form DL-26 (collectively, Medical Forms). *See* R.R. at 22a.

On January 4, 2019, Sexauer underwent an Adaptive Driving Program On-Road Assessment at the University of Pittsburgh School of Health and Rehabilitation Sciences. *See* R.R. at 46a-48a. Thereafter, Certified Driving

---

[2] 75 Pa.C.S. § 1519(c).

Rehabilitation Specialist Amy Lane (Lane) issued a report (Assessment Report), summarizing:

> At this time based on the assessment today, [Sexauer] does not demonstrate the necessary skills required to safely operate a motor vehicle. She [] acknowledged that she was making many mistakes, but was adamant that she does not typically drive in this manner. She inquired about re-evaluation. Unfortunately, she is under medical recall effective tomorrow. Additionally, she has multiple medical forms in need of completion.

> She was counseled that she should not be driving at this time due to her performance today and due to her license recall effective 1/5/19. If she truly wants to try a driving re-evaluation, she was recommended to call [DOT] and request a 30[-]day extension on her medical recall. If so, she could attempt a driving re-evaluation. It is unlikely [DOT] will allow the extension. If that is denied, [DOT] may require her to obtain a dual control permit, which is a restricted type of permit issued to [sic] the driving school. She was counseled that this is a lengthy and expensive process and that another driving assessment may reveal the same results.

> . . . .

> The results of this evaluation are indicative of her performance as observed on this time and date. These results may not necessarily be predictive of any unanticipated medically related issues, roadway conditions or interactions with other roadway users.

R.R. at 48a.

On January 23, 2019, Dr. Zimmerman completed the Medical Forms. On the Cardiovascular Form DL-120, Dr. Zimmerman confirmed that Sexauer had cardiovascular disease (CAD and CABG) and a history of dyspnea. *See* R.R. at 42a. Under "[a]ny other signs or symptoms that would impair [her] ability to operate a motor vehicle?," Dr. Zimmerman indicated: "Ө." R.R. at 42a. On the General Medical Form DL-123, Dr. Zimmerman listed that Sexauer had CAD and CABG, lumbar

4

degenerative disc disease, left knee osteoarthritis, glaucoma, macular degeneration, hypertension, and right tka.[3]  *See* R.R. at 43a.  In response to the question: "Do the diseases/conditions/disorders interfere with the patient's mental or physical ability to operate a motor vehicle?," Dr. Zimmerman wrote, "Yes" and referred to the Assessment Report.  R.R. at 43a.  On the General Neurologic Form DL-124, Dr. Zimmerman recorded that Sexauer's left knee osteoarthritis causes her pain and decreased range of motion, which affects her ability to operate a motor vehicle because she has difficulty getting in and out.  *See* R.R. at 45a.  On the Orthopedic Form DL-26, Dr. Zimmerman recorded that Sexauer's reaction time and her extremity movement coordination are impaired.  *See* R.R. at 44a.  In response to the question of whether Sexauer "should cease driving immediately" as a result thereof, Dr. Zimmerman marked, "Yes."  R.R. at 44a.

On January 28, 2019, Sexauer appealed from DOT's Notice to the trial court.  *See* R.R. at 3a-7a.  By February 4, 2019 letter, DOT notified Sexauer that, based upon its review, a "Dual Mirror" restriction must be added to her driver's license.  R.R. at 20a.  By March 14, 2019 letter, DOT informed Sexauer that it was necessary for her to take and successfully pass a driver skills test in order for DOT to determine if she met its medical standards for driving a motor vehicle.  *See* R.R. at 32a.  The letter declared: "This letter will allow you three opportunities to take the test.  If a test is failed, it cannot be retried the same day."  *Id*.

On April 24, 2019, Dr. Zimmerman faxed the Medical Forms and the Assessment Report to DOT.  *See* R.R. at 42a-45a.  On April 25, 2019, Sexauer took a driver skills test and failed.  *See* R.R. at 12a, 33a-34a.  The trial court scheduled a hearing for May 2, 2019, which was continued for Sexauer to take the driver skills test a second time.  *See* R.R. at 8a-9a.  Sexauer took the driver skills test again on May 7,

---

[3] "[T]ka" was not defined on the General Medical Form DL-123.  *See* R.R. at 43a.

5

2019, and failed. *See* R.R. at 12a, 38a-40a. On May 23, 2019, DOT notified Sexauer that, based on her Medical Forms, she did not meet DOT's medical standards, and her driving privilege could not be restored at that time. *See* R.R. at 37a. In response to Sexauer's request to restore her driving privilege, DOT enclosed additional medical forms for Sexauer to have completed and returned to DOT. *See* R.R. at 36a.

The trial court hearing was conducted on September 26, 2019. *See* R.R. at 10a-18a. At the hearing, Sexauer's counsel represented to the trial court that Sexauer desired to take her third driver skills test, since "[s]he took the test once and she did [not] pass. We had [the hearing] continued. She didn't pass the second time because of parallel parking. I had arranged for her to have lessons." R.R. at 12a. He added:

> We were arranging this because she's only going to have one more shot. And what happened was [DOT] informed her without any evidentiary basis that she cannot take it for medical reasons. So she will testify that there has been no change in her medical conditions. [DOT] had all of the documents.

R.R. at 13a.

DOT's counsel presented certified copies of Sexauer's records, including the Medical Records and Assessment Report.[4] *See* R.R. at 13a. DOT's counsel further stated that Sexauer's Medical Records were sent to DOT in January 2019 and, thus, were stale, so DOT's Medical Advisory Board wanted updated Medical Records before allowing Sexauer to take the driver skills test the third time. *See* R.R. at 13a, 15a.

The trial court declared from the bench: "We have one piece of medical advi[c]e that basically says she shouldn't be driving. And we have another piece of medical advi[c]e that says she should be driving. So right now we have medical testimony that she should be driving. Let her take the test." R.R. at 16a. "[S]he cannot

---

[4] Notably, the notes of testimony from the September 26, 2019 hearing do not reflect that the trial court admitted DOT's records into evidence.

6

park, but she is okay to drive. That's the state of the record." R.R. at 17a. Neither party presented further evidence. On September 26, 2019, the trial court sustained Sexauer's appeal. *See* R.R. at 49a. DOT appealed to this Court.[5]

The trial court ordered DOT to file its Concise Statement of Errors Complained of on Appeal pursuant to Pennsylvania Rule of Appellate Procedure (Rule) 1925(b), which DOT did on November 13, 2019. On December 19, 2019, the trial court issued its opinion in accordance with Rule 1925(a) (Rule 1925(a) Opinion). *See* R.R. at 62a-67a.

DOT argues that this Court should vacate the trial court's order and remand for additional proceedings because DOT's counsel misstated a material fact regarding DOT's awareness of Sexauer's Medical Forms, which were completed in January 2019 but faxed to DOT on April 24, 2019, and DOT should not be estopped from correcting this error.

Section 1518(b) of the Vehicle Code mandates:

> All physicians . . . authorized to diagnose or treat disorders and disabilities defined by the Medical Advisory Board shall report to [DOT], in writing, the full name, date of birth and address of every person over 15 years of age diagnosed as having any specified disorder or disability within ten days.

75 Pa.C.S. § 1518(b). Section 83.5 of DOT's Regulations specifies, in pertinent part:

> (b) *Disqualification on provider's recommendation.* A person who has any of the following conditions will not be qualified to drive if, in the opinion of the provider, the

---

[5] "Our review is limited to determining whether the trial court's necessary findings are supported by substantial evidence and whether the court committed a reversible error of law or abused its discretion." *Helwig v. Dep't of Transp., Bureau of Driver Licensing*, 99 A.3d 153, 157 n.4 (Pa. Cmwlth. 2014).

On October 14, 2020, this Court issued an order precluding Sexauer from filing a brief because she failed to comply with the Court's August 17, 2020 Order directing her to file her brief within 14 days.

7

condition is likely to impair the ability to control and safely operate a motor vehicle:

(1) Loss of a joint or extremity as a functional defect or limitation.

(2) Impairment of the use of a joint or extremity as a functional defect or limitation.

(i) The provider should inform the patient of the prohibition against driving due to the functional impairment.

(ii) The provider shall inform [DOT] in writing of the impairment if the condition has lasted or is expected to last longer than 90 days.

(3) Rheumatic, arthritic, orthopedic, muscular, vascular or neuromuscular disease.

(i) The provider should inform the patient of the prohibition against driving due to the functional impairment.

(ii) The provider shall inform [DOT] in writing of the impairment if the condition has lasted or is expected to last longer than 90 days.

(4) Cerebral vascular insufficiency or cardiovascular disease which, within the preceding 6 months, has resulted in lack of coordination, confusion, loss of awareness, dyspnea upon mild exertion or any other sign or symptom which impairs the ability to control and safely perform motor functions necessary to operate a motor vehicle.

. . . .

(c) *Driving examination.* A person who has any of the conditions enumerated in subsection (b)(1), (2), (3) or (8) may be required to undergo a driving examination to determine driving competency, if [DOT] has reason to believe that the person's ability to safely operate a motor vehicle is impaired. The person may be restricted to driving only when utilizing appropriate adaptive equipment.

8

67 Pa. Code § 83.5.

"Section 1519 of the Vehicle Code provides [DOT] with the statutory authority for determining a licensee's competency to operate a vehicle." *Neimeister v. Dep't of Transp.*, *Bureau of Driver Licensing*, 916 A.2d 712, 714 (Pa. Cmwlth. 2006). Section 1519(c) of the Vehicle Code mandates:

> [DOT] shall recall the operating privilege of any person whose incompetency has been established under the provisions of this chapter. The recall shall be for an indefinite period until satisfactory evidence is presented to [DOT] in accordance with regulations to establish that such person is competent to drive a motor vehicle. [DOT] shall suspend the operating privilege of any person who refuses or fails to comply with the requirements of this section until that person does comply and that person's competency to drive is established. Any person aggrieved by recall or suspension of the operating privilege may appeal in the manner provided in [S]ection 1550 [of the Vehicle Code, 75 Pa.C.S. § 1550]. The judicial review shall be limited to whether the person is competent to drive in accordance with the provisions of the regulations promulgated under [S]ection 1517 [of the Vehicle Code, 75 Pa.C.S. § 1517] (relating to [the] Medical Advisory Board).

75 Pa.C.S. § 1519(c).

> In a recall proceeding, it is DOT's burden to prove by a preponderance of the evidence that the licensee is medically incompetent to drive. *Byler v. Dep't of Transp.*, *Bureau of Driver Licensing*, 883 A.2d 724 (Pa. Cmwlth. 2005). A preponderance of the evidence standard, the lowest evidentiary standard, is tantamount to 'a more likely than not' inquiry. *Carey v. Dep't of Corr.*, 61 A.3d 367, 374 (Pa. Cmwlth. 2013).

> DOT may make a *prima facie* case of medical incompetency by introducing the medical report submitted to DOT by a healthcare provider. *Meter v. Dep't of Transp.*, *Bureau of Driver Licensing*, 41 A.3d 901 (Pa. Cmwlth. 2012). Once DOT establishes a *prima facie* case, the burden of production

9

then shifts to the licensee to establish that she was competent to drive on the date of the recall or has since become competent to drive. *Id.* If the licensee is successful, the burden shifts back to DOT to present additional evidence of incompetency to satisfy its ultimate burden of proof. *Byler.* Notwithstanding the shifting burden of production, '[t]he burden of persuasion never leaves [DOT], but the medical report itself is sufficient to meet and overcome [DOT]'s initial burden to establish a *prima facie* case.' *Meter*, 41 A.3d at 905-[]06 (quoting *Reynolds v. Dep't of Transp., Bureau of Driver Licensing*, 694 A.2d 361, 364 (Pa. Cmwlth. 1997)).

The trial court is the ultimate finder of fact. *Byler.* It is within the trial court's discretion to make credibility and persuasiveness determinations. *Id.* In making a determination of whether a licensee is competent to drive, a trial court may consider 'the timing and issuance of multiple forms, the conflicting statements contained on the forms and the lack of clarity regarding the extent to which [a] [p]hysician's opinion were based on current examinations.' *Turk v. Dep't of Transp., Bureau of Driver Licensing*, 983 A.2d 805, 815 (Pa. Cmwlth. 2009).

A trial court's decision to sustain a recalled licensee's appeal must be supported by substantial evidence. *Meter*; *Dewey v. Dep't of Transp., Bureau of Driver Licensing*, 997 A.2d 416 (Pa. Cmwlth. 2010); *Byler.* Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Zaleski v. Dep't of Transp., Bureau of Driver Licensing*, 22 A.3d 1085 (Pa. Cmwlth. 2011).

*Helwig v. Dep't of Transp., Bureau of Driver Licensing*, 99 A.3d 153, 158-59 (Pa. Cmwlth. 2014).

In the instant matter, DOT presented certified copies of the Medical Records and the Assessment Report. The trial court concluded based on DOT's records and counsels' representations:

During the hearing[,] [DOT] entered into evidence records that included the [M]edical [F]orms it had received and the letters it sent to [Sexauer]. In response to the recall letter, [Sexauer] had medical providers complete additional forms

10

in January of 2019, which were sent to [DOT]. On March 14, 2019, [DOT] sent a letter to [Sexauer] informing her that she was required to pass a vision test, which she passed, and take a driver skills test. Importantly, the letter stated '[t]his letter will allow you three opportunities to take the test. If a test is failed, it cannot be retried the same day.' There were no other conditions in this letter or time restraints that limited the time period she had to pass the driver [skills] test.

[Sexauer] took the driver skills test on April 25, 2019, but she failed the test. She took it again on May 7, 2019, and failed it due to parking. [Sexauer] had one remaining opportunity to take the test after May 7, 2019. [Sexauer] has not used her final opportunity to take the driver[] skills test.

On May 23, 2019, [DOT] sent [Sexauer] a letter stating her driving privilege[] will not be restored because she does not meet [its] medical standards. On June 28, 2019, [DOT] sent [Sexauer] a letter with additional forms that her medical professionals need to complete before [DOT] will determine whether she meets the medical standards it requires. However, [Sexauer] still has one remaining opportunity to take the driver[] skills test pursuant to [DOT's] letter of March 14, 2019. **There were no changes to [Sexauer's] health reported to [DOT] between the March letter and the May letter**. During the hearing, [DOT] stated that additional medical forms were required because the medical forms that [DOT] received in January [] had become stale by June. The [R]egulations regarding recall of operating privilege[] do not set a time period after which the medical information submitted to [DOT] becomes 'stale[.]'[]

[**DOT**] **did not receive information between January and June of 2019 to suspect [Sexauer's] medical condition had deteriorated**. The only additional information that [DOT] received during this period was the results of the driver skill[s] test that [Sexauer] took twice and failed. However, [DOT] permitted [Sexauer] to take the driver skills test three times. Therefore, this Court sustained [Sexauer's] appeal and Ordered that she be given a third opportunity to pass her driver skills test as authorized by [DOT's] letter of March 14, 2019.

R.R. at 65a-67a (emphasis added; internal record citation omitted).

11

The trial court was clearly under the impression that DOT received Sexauer's Medical Forms and Assessment Report after they were completed in January 2019, that DOT nevertheless notified Sexauer in March 2019 that she would have three opportunities to take and pass a driver skills test, *see* R.R. at 32a, and then DOT reversed its position in May 2019 without any basis. *See* R.R. at 37a. Although it is unclear whether the Medical Forms and the Assessment Report were submitted to DOT in January 2019,[6] it is evident that DOT's counsel was unaware at the time of the hearing that they had been faxed to DOT on April 24, 2019. Those documents reflected a significant change in Dr. Zimmerman's opinion of Sexauer's ability to drive since he completed the Initial Reporting Form in December 2018. If DOT received the documents in January 2019, then the trial court's decision was supported by the evidence. If, however, DOT received the Medical Forms and the Assessment Report for the first time in April 2019, those documents would have been the intervening change between March and May that the trial court believed did not exist.

"It is well settled in Pennsylvania that driving is a privilege, not a property right. To obtain the benefit of such a privilege, a driver must abide by the laws of the Commonwealth relating to the privilege." *Renfroe v. Dep't of Transp.*, *Bureau of Driver Licensing*, 179 A.3d 644, 648 (Pa. Cmwlth. 2018) (citation omitted); *see also Commonwealth v. Vivio*, 224 A.2d 777, 778 (Pa. Super. 1966) ("A license to operate a motor vehicle is a limited right to use the public highway, and it is for the Commonwealth, acting through the legislature, to direct the conditions under which this right shall be exercised."). "The primary purpose of the [Vehicle Code] and its amendments is to protect and promote public safety and property within the Commonwealth." *Commonwealth v. DeFusco*, 549 A.2d 140, 142 (Pa. Super. 1988).

---

[6] Notably, Sexauer's counsel did not make any representations to the trial court to confirm or deny DOT's understanding, and this Court does not have the benefit of Sexauer's position on appeal, as she was precluded from filing a brief.

Finally, remand for a hearing is necessary when an appellate court cannot determine whether the trial court relied on inaccurate information. *Commonwealth v. Cowan*, 418 A.2d 753, 753-54 (Pa. Super. 1980).

Under circumstances in which DOT appears to have made a material misrepresentation to the trial court, the trial court did not admit DOT's records into evidence and rendered its decision based solely on DOT's representations, and the lives of Sexauer and other citizens are at stake, we agree with DOT that the trial court's decision must be vacated and this matter remanded to the trial court for a new hearing.

Based on the foregoing, this Court vacates the trial court's order and remands for the trial court to conduct a new hearing consistent with this opinion.

_____
ANNE E. COVEY, Judge

Dorothy Marie Sexauer    :
            :
      v.      :
            :
Commonwealth of Pennsylvania, :
Department of Transportation,  :
Bureau of Driver Licensing,   : No. 1497 C.D. 2019
       Appellant :

## O R D E R

AND NOW, this 23rd day of December, 2020, the Allegheny County Common Pleas Court's (trial court) September 26, 2019 order is vacated, and this matter is remanded to the trial court for a new hearing consistent with this opinion.

Jurisdiction is relinquished.

_____
ANNE E. COVEY, Judge